J. Andrew Fine (Pro Hac forthcoming)
MARSHALL SOCARRAS GRANT
197 S. Federal Hwy, Suite 300
Boca Raton, FL  33432
Telephone: (561) 325-6402
Email:  afine@msglaw.com

Mitchell A. Stephens (11775)
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile:  (801) 363-6666
Email:  mstephens@hjdlaw.com

*Attorneys for Worldclear Limited*

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| WORLDCLEAR LIMITED,<br><br>       Plaintiff,<br>v.<br><br>AKIRIX, LLC,<br><br>       Defendant. | **COMPLAINT**<br><br>Civil No. 1:17-cv-00155<br><br>Magistrate Judge Paul M. Warner<br><br>(Jury Trial Demanded) |

COMES NOW, the Plaintiff, Worldclear Limited, ("Worldclear"), by and through the undersigned, and hereby sues Defendant Akirix, LLC ("Akirix"), and says:

## INTRODUCTION

1.     Worldclear Limited brings this action against Akirix for misappropriating funds entrusted to Akirix by Worldclear.  As further detailed, Akirix provided transactional assistance to customers involved in international financial transactions.  Akirix provided an online payment system for customers to monitor transactions, and also provided a "nested" account whereby

customers could undertake financial transactions for third-parties when the third-parties did not have easy access to the United States banking system. For example, if third-party "X" in a foreign country sought to wire funds into the United States but could not, X would contact Company "A," who had a certain amount of funds held by Akirix or in an Akirix account, and who had access to the Akirix online system. Company A would receive funds from Customer X outside of the United States, and would in turn instruct Akirix to complete the transaction with Company A's funds held within the United States. In this way, Company A never actually transmitted Customer X's funds to the United States; however, Customer X still completed a wire transfer according to that customer's needs. In the instant case, Worldclear was a customer of Akirix.

## PARTIES

2. Worldclear is a limited company formed and existing under the laws of New Zealand, with its main office in Hamilton, New Zealand. No members of the company are residents of the United States.

3. Akirix is a limited liability company formed and existing under the laws of Utah, with its main office in Ogden, Utah. Upon information and belief, the members of the limited liability company are all residents of Utah.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332, as the controversy is between a foreign entity and a United States limited liability company, and the amount in controversy exceeds $75,000.00. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b).

# FACTS

5. Worldclear and Akirix entered into an agreement on or about February 16, 2016, whereby Akirix would process wire transfers on behalf of Worldclear.

6. Under this agreement, Akirix would act as payment facilitator for Worldclear: Worldclear would receive a wire request from a third-party Worldclear client located outside the United States, and would in turn direct Akirix to make a transfer in relation to the client request, and Akirix would ultimately make said transfer from a separate fund in return for a fee. As a result, Worldclear and its clients could effectively make wire transfers without the need for "correspondent" banking relationships within the United States. Inward wire services were also offered whereby funds could be sent to Akirix and appear in Worldclear's accounts in the Akirix system, which Worldclear would then account to and credit its customer for.

7. Under this agreement, Worldclear also had access to an Akirix-provided online system whereby Worldclear could track wires and reconcile its Akirix-held accounts with its customer accounts and accounting systems outside the USA.

8. A necessary component of this arrangement was for Akirix to hold a certain amount of Worldclear's funds so that Akirix could facilitate the transfers requested by Worldclear.

9. Akirix facilitated Worldclear's transfers from approximately February 2016 until late September 2016.

10. On September 28, 2016, claiming difficulty with its own bank, Akirix cut off Worldclear's access to the Akirix system, thereby depriving Worldclear of real-time information relating to transfers, and informed Worldclear that it would no longer continue providing transactional services to Worldclear.

11. The parties then signed an "Account Closure Request and Settlement Agreement" ("Closure Agreement") on or about October 3, 2016, and on October 4, 2016, Akirix supposedly closed the Worldclear account.

12. After the closure of the Worldclear account, it became clear that Akirix could not account for a large amount of money due to Worldclear. On Dec 8, 2016, Worldclear inquired about the discrepancy, Akirix informed Worldclear that it planned to charge a large amount of unjustified fees totaling nearly $1 million to "review" Worldclear transactions.

13. Akirix also provided incomplete statements to Worldclear, and ceased providing Worldclear with any information whatsoever in December 2016.

14. Worldclear analyzed the information it had, and after comparing the transfers to the account statements provided by Akirix, Worldclear realized that there was a large shortfall between Worldclear's stated balance and the amount Akirix should have held on behalf of Worldclear. Specifically, Worldclear discovered a shortfall of 4,330,196.79, as follows:

   a. $4,217,811.79 – current statement balance, calculated as all credits less all debits, based on statements provided by Akirix to December 31, 2016 (the daily balances on the statements have accumulating discrepancies that add up to $4,114,294.98 as at Nov 30, 2016, being the last statement that shows a closing balance);

   b. $50,000.00 – unjustified invoice debits. These were unexplained charges debited by Akirix, which Akirix has yet to explain.

   c. $46,775.00 – disputed or irregular transaction debits (reflected on statements from October 11, 2016 to December 22, 2016), which Akirix has yet to adequately justify or resolve;

d.   $15,360.00 – unjustified and unsupported "bank fees" charged in November and December, 2016.

15. Worldclear contacted Akirix on numerous occasions to determine the reasons for the various charges and shortfalls detailed above. However, Akirix has failed to provide any reasonable explanation for the charges.

16. Akirix has also failed to pay the remaining statement balance to Worldclear despite previously agreeing to do so by January 3, 2017 in the Closure Agreement, which was unilaterally prepared by Akirix.

17. Additionally, instead of returning funds to Worldclear or completing transactions as promised, Akirix went to third-party customers of Worldclear and, in essence, held their funds "hostage." Specifically, Akirix contacted Worldclear customers and informed those customers that it would only complete a given transaction or refund the customer's funds if the customer paid Akirix an administrative fee or purchased an insurance policy from Akirix or a related party. Worldclear is aware of two such cases: one where Akirix extorted $100,000 from Worldclear customer Choice Bank Limited, who in turn passed on the loss to their customer Paxum, Inc., and one from Strategic Bank Limited where Akirix extorted $260,000.

18. As a result of Akirix's actions, and of Akirix's unlawful retention of funds, Worldclear was forced to seek reorganization in its home country of New Zealand.

19. As a result of Akirix's actions, Worldclear was damaged as more specifically set forth below.

20. At all relevant times, Akirix's actions took place within the United States.

## COUNT I
## BREACH OF FIDUCIARY DUTY

21. Worldclear restates the allegations in paragraphs 1-20 above as if fully set forth herein.

22. Because it held Worldclear's funds in its account, and because it promised to fully account for those funds and transmit those funds as directed by Worldclear, Akirix owed a duty to Worldclear.

23. Akirix breached that duty by overcharging Worldclear and by failing to account for and deliver funds belonging to Worldclear.

24. As an actual and proximate result of Akirix's actions, Worldclear was damaged in an amount of at least $4,330,196.79.

## COUNT II
## BREACH OF CONTRACT
## (INITIAL AGREEMENT)

25. Worldclear restates the allegations in paragraphs 1-20 above as if fully set forth herein.

26. Worldclear and Akirix entered into an oral agreement under which Akirix agreed to provide transaction payment services for Worldclear.

27. Under this agreement, Akirix agreed to receive payments and hold them in trust for Worldclear and to transmit Worldclear's funds, which were held in Akirix's accounts, to Worldclear's orders.

28. Under this agreement, Akirix also expressly or impliedly agreed not to excessively charge Worldclear arbitrary fees, excessive fees, or fees for non-existent services.

29.  Under this agreement Akirix also agreed to hold Worldclear's funds in trust, and to not wrongfully hold or appropriate said funds.

30.  Akirix breached its agreement with Worldclear by failing to provide explanation for charges, failing to reconcile wire transfers that were incorrect, failing to account for wire transfers that were returned, failing to refund returned funds to Worldclear, and by otherwise misappropriating funds belonging to Worldclear.

31.  As an actual and proximate result of Akirix's actions, Worldclear was damaged in an amount of at least $4,330,196.79.

## COUNT III
## BREACH OF CONTRACT
## (CLOSURE AGREEMENT)

32.  Worldclear restates the allegations in paragraphs 1-20 above as if fully set forth herein.

33.  On or about October 3, 2016, Akirix and Worldclear entered into the Closure Agreement.

34.  The Closure Agreement provided that, among other things, Akirix would hold Worldclear's funds in trust and would refund all of Worldclear's funds held by Akirix by January 3, 2016.

35.  Akirix violated this agreement by not holding Worldclear's funds in trust, by not refunding Worldclear's funds as promised, and by otherwise failing to properly account for Worldclear's funds.

36.  As an actual and proximate result of Akirix's actions, Worldclear was damaged in an amount of at least $4,330,196.79.

## COUNT IV
## UNJUST ENRICHMENT
### (alternative to Counts II and III)

37. Worldclear restates the allegations in paragraphs 1-20 above as if fully set forth herein.

38. In the event this Court finds that no contract existed between the parties, Akirix has retained funds belonging to Worldclear without justification, and has accepted the benefit of Worldclear's deposit of, and Akirix's retention of, those funds.

39. Akirix had knowledge of, and voluntarily accepted, this benefit.

40. Akirix has failed to provide anything in return for the benefit conferred.

41. Under the circumstances, it would be inequitable for Akirix to accept and retain the benefit of Worldclear's funds in return for nothing.

42. As an actual and proximate result of Akirix's actions, Worldclear was damaged in an amount of at least $4,330,196.79.

## COUNT V
## CONVERSION

43. Worldclear restates the allegations in paragraphs 1-20 above as if fully set forth herein.

44. Akirix currently holds funds belonging to Worldclear.

45. Worldclear has a right to the funds that are held by Akirix.

46. Akirix has wrongfully exercised dominion and control over those funds by holding them and refusing to return them.

47. Akirix intentionally interfered with Worldclear's ownership of the funds.

48. Akirix's interference wrongfully deprived Worldclear of the use of the funds.

49. As a result of Akirix's conduct, Worldclear was damaged in an amount of at least $4,330,196.79.

## COUNT VI
## FRAUD IN THE INDUCEMENT
## (INITIAL AGREEMENT AND CLOSURE AGREEMENT)

50. Worldclear restates the allegations in paragraphs 1-20 above as if fully set forth herein.

51. Akirix, through its authorized representatives, made the following statements to Worldclear in February 2016, prior to Worldclear's decision to enter into a business agreement with Worldclear:

    a.    That Akirix would hold Worldclear's funds in trust;

    b.    That Akirix would only make proper, authorized deductions from Worldclear's account that reflected wire transactions authorized by Worldclear;

    c.    That Akirix would only charge Worldclear legitimate fees for Akirix's services;

    d.    That Akirix would provide Worldclear with access to Akirix's online systems so that Worldclear could monitor the status of Worldclear's account with Akirix in real time;

    e.    That Akirix would not misappropriate Worldclear's funds.

52. On October 3, 2016, Akirix induced Worldclear to enter into the Closure Agreement, by promising Worldclear that Akirix would hold Worldclear's funds in trust, and that Akirix would refund all of Worldclear's funds by January 2017.

53. Akirix knew or should have known that some or all of the aforementioned statements relating to the original agreement between the parties, and that some or all of the aforementioned statement relating to the Closure Agreement, were untrue when made.

54. Akirix intended that Worldclear rely on the aforementioned false statements as an inducement for Worldclear to provide funds to Akirix, and as an inducement for Worldclear to enter into the Closure Agreement.

55. Worldclear in fact relied on the statements of Akirix in providing it with funds and in entering into the Closure Agreement

56. The statements of Akirix, as described herein, were false statements concerning material facts.

57. As an actual and proximate result of Akirix's actions, Worldclear was damaged in an amount of at least $4,330,196.79.

## COUNT VII
## FRAUD

58. Worldclear restates paragraphs 1-20 as if fully set forth herein.

59. Akirix, through its authorized representatives, made the following statements to Worldclear in February 2016, prior to Worldclear's decision to enter into a business agreement with Worldclear:

   a. That Akirix would hold Worldclear's funds in trust;

   b. That Akirix would only make proper, authorized deductions from Worldclear's account that reflected wire transactions authorized by Worldclear;

   c. That Akirix would only charge Worldclear legitimate fees for Akirix's services;

   d. That Akirix would provide Worldclear with access to Akirix's online systems so that Worldclear could monitor the status of Worldclear's account with Akirix in real time;

   e. That Akirix would not misappropriate Worldclear's funds.

60. On October 3, 2016, Akirix induced Worldclear to enter into the Closure Agreement,

by promising Worldclear that Akirix would hold Worldclear's funds in trust, and that Akirix would refund all of Worldclear's funds by January 2016.

61. Akirix knew or should have known that some or all of the aforementioned statements relating to the original agreement between the parties, and that some or all of the aforementioned statement relating to the Closure Agreement, were untrue when made.

62. Akirix intended that Worldclear rely on the aforementioned false statements as an inducement for Worldclear to provide funds to Akirix, and as an inducement for Worldclear to enter into the Closure Agreement.

63. Worldclear in fact relied on the statements of Akirix in providing it with funds and in entering into the Closure Agreement

64. The statements of Akirix, as described herein, were false statements concerning material facts.

65. In fact, upon information and belief, Akirix utilized the funds provided by Worldclear for its own purposes, or for purposes other than as represented by Akirix.

66. As an actual and proximate result of Akirix's actions, Worldclear was damaged in an amount of at least $4,330,196.79.

## COUNT VIII
## CONSPIRACY TO DEFRAUD

67. Worldclear restates paragraphs 1-20 as if fully set forth herein.

68. Two or more employees of Akirix, authorized by Akirix, conspired to make false statements to Worldclear, as detailed *supra* at Counts V and VI of this complaint;

69. In making the aforementioned false statements, it was intended that Worldclear rely on said statements and provide funds to Akirix, which funds would then be retained in violation

of one or more laws of the United States.

70. Worldclear did, in fact, rely on those false statements, and as a result actually delivered funds to Akirix.

71. As an actual and proximate result of Akirix's actions and of the actions of two or more of Akirix's authorized representatives, Worldclear was damaged in an amount of at least $4,330,196.79.

## COUNT IX
## ACCOUNTING / CONSTRUCTIVE TRUST

72. Worldclear restates paragraphs 1-20 as if fully set forth herein.

73. Akirix is currently in possession of funds belonging to Worldclear, but refuses to provide a complete accounting or reconciliation of those funds.

74. To date, the discrepancy in accounting is at least $4,330,196.79.

75. Without an independent accounting, it will be unclear how much, if any, of the funds currently in the possession of Akirix actually belong to Worldclear.

76. Further, in the interim, Worldclear has no remedy at law to prevent Akirix from wasting, spending, or otherwise utilizing Worldclear's funds.

77. According, it would be equitable for this Court to order a third-party accounting, at the expense of Akirix, and to place a constructive trust over the assets of Akirix to ensure that Worldclear's funds are not subject to improper depletion.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Worldclear, requests the following relief from this Court:

A. For Count I, damages from Akirix in an amount of at least $4,330,196.79;

B. For Count II, damages from Akirix in an amount of at least $4,330,196.79;

C. For Count III, damages from Akirix in an amount of at least $4,330,196.79;

D. For Count IV, as an alternative to Counts I, II, or III, damages from Akirix in an amount of at least $4,330,196.79;

E. For Count V, damages from Akirix in an amount of at least $4,330,196.79, plus punitive damages in an amount to be determined;

F. For Count VI, damages from Akirix in an amount of at least $4,330,196.79, plus punitive damages in an amount to be determined;

G. For Count VII, damages from Akirix in an amount of at least $4,330,196.79, plus punitive damages in an amount to be determined

H. For Count VIII, damages against Akirix and its authorized representatives, once identified, jointly and severally, in an amount of at least $4,330,196.79, plus punitive damages in an amount to be determined.

I. For Count IX, establishment of a constructive trust over the assets of Akirix, and a full independent accounting of the transactions that are the subject of this dispute, with all costs to be paid by Akirix.

J. For all counts on which recovery is granted, prejudgment and post-judgment interest at the statutory rate;

K. Attorney fees where allowed by law;

L. Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Worldclear hereby demands a jury trial on all claims so triable.

Dated: October 4, 2017

                        Marshall Socarras Grant

                        */s/ J. Andrew Fine*_____
                        J. Andrew Fine

                        Hatch, James & Dodge, P.C.

                        */s/ Mitchell A. Stephens*_____
                        Mitchell A. Stephens

                        *Attorneys for Worldclear Limited*