J. Andrew Fine (Pro Hac Vici)
Marshall Socarras Grant
197 S. Federal Hwy, Suite 300
Boca Raton, FL 33432
Telephone: (561) 325-6402
Email: afine@msglaw.com

Mitchell A. Stephens (11775)
Hatch, James & Dodge, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Email: mjames@hjdlaw.com
      mstephens@hjdlaw.com
      jjames@hjdlaw.com

*Attorneys for Worldclear Limited*

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| WORLDCLEAR LIMITED,<br><br>        Plaintiff,<br><br>v.<br><br>AKIRIX, LLC,<br><br>        Defendant. | **AMENDED COMPLAINT**<br><br>Civil No. 1:17-cv-00155-DAK-EJF<br><br>Judge Dale A. Kimball<br>Magistrate Judge Evelyn J. Furse<br><br>(Jury Trial Demanded) |

COMES NOW, the Plaintiff, Worldclear Limited, ("Worldclear"), by and through the undersigned, and hereby sues Defendant Akirix, LLC ("Akirix"), and says:

### Introduction

1.    Worldclear Limited brings this action against Akirix for misappropriating funds entrusted to Akirix by Worldclear. As further detailed, Akirix provided transactional assistance

to customers involved in international financial transactions.  Akirix provided an online payment system for customers to monitor transactions, and also provided a "nested" account whereby customers could undertake financial transactions for third-parties when the third-parties did not have easy access to the United States banking system.  For example, if third-party "X" in a foreign country sought to wire funds into the United States but could not, X would contact Company "A," who had a certain amount of funds held by Akirix or in an Akirix account, and who had access to the Akirix online system.  Company A would receive funds from Customer X outside of the United States, and would in turn instruct Akirix to complete the transaction with Company A's funds held within the United States.  In this way, Company A never actually transmitted Customer X's funds to the United States; however, Customer X still completed a wire transfer according to that customer's needs.  In the instant case, Worldclear was a customer of Akirix.

## Parties

2.     Worldclear is a limited company formed and existing under the laws of New Zealand, with its main office in Hamilton, New Zealand.  No members of the company are residents of the United States.

3.     Akirix is a limited liability company formed and existing under the laws of Utah, with its main office in Ogden, Utah.  Upon information and belief, the members of the limited liability company are all residents of Utah.

## Jurisdiction and Venue

4.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332, as the controversy is between a foreign entity and a United States limited liability company, and the amount in

controversy exceeds $75,000.00.  Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b).

**Facts**

5.      Worldclear and Akirix entered into an agreement, by virtue of the establishment of a Worldclear account with Akirix, on or about February 16, 2016, whereby Akirix would provide escrow services and process wire transfers on behalf of Worldclear.

6.      Under this agreement, Akirix would act as an escrow agent and payment facilitator for Worldclear:  Worldclear would receive a wire request from a third-party Worldclear client located outside the United States, and would in turn direct Akirix to make a transfer in relation to the client request, and Akirix would ultimately make said transfer from a separate fund in return for a fee.  As a result, Worldclear and its clients could effectively make wire transfers without the need for "correspondent" banking relationships within the United States.  Inward wire services were also offered whereby funds could be sent to Akirix and appear in Worldclear's accounts in the Akirix system, which Worldclear would then credit to its customers.

7.      Under this agreement, Worldclear also had access to an Akirix-provided online system whereby Worldclear could track wires and reconcile its Akirix-held accounts with its customer accounts and accounting systems outside the USA.

8.      A necessary component of this arrangement was for Akirix to hold a certain amount of Worldclear's funds at all times so that Akirix could facilitate the transfers requested by Worldclear without undue delay.  In this sense, Akirix acted as an "escrow agent."

9.      Akirix facilitated Worldclear's transfers from approximately February 2016 until late September 2016.

10.     On September 28, 2016, claiming difficulty with its own bank, Akirix cut off Worldclear's access to the Akirix system, thereby depriving Worldclear of real-time information relating to transfers, and informed Worldclear that it would no longer continue providing transactional services to Worldclear.

11.     The parties then signed an "Account Closure Request and Settlement Agreement" ("Closure Agreement") on or about October 3, 2016, and on October 4, 2016, Akirix supposedly closed the Worldclear account.  See Exhibit A.  Upon information and belief, this is the only document executed between the parties.

12.     As part of the Closure Agreement, Akirix agreed that it would hold Worldclear's funds "in trust."  At the time of the closure, and when Akirix cut off Worldclear's access to Akirix's online account information, Akirix held or should have held approximately $4,500,000.00 of funds due to Worldclear for the benefit of Worldclear's clients.

13.     After the closure of the Worldclear account, it became clear that Akirix could not account for a large amount of money due to Worldclear.  On Dec 8, 2016, Worldclear inquired about the discrepancy, Akirix informed Worldclear that it planned to charge a large amount of unjustified fees totaling nearly $1 million to "review" Worldclear transactions.

14.     Akirix also provided incomplete statements to Worldclear, and ceased providing Worldclear with any information whatsoever in December 2016.

15.     Worldclear analyzed the information it had, and after comparing the transfers to the account statements provided by Akirix, Worldclear realized that there was a large shortfall between Worldclear's stated balance and the amount Akirix should have held on behalf of Worldclear.  Specifically, Worldclear discovered a shortfall of 4,330,196.79, as follows:

a.    $4,217,811.79 – current statement balance, calculated as all credits less all debits, based on statements provided by Akirix to December 31, 2016 (the daily balances on the statements have accumulating discrepancies that add up to $4,114,294.98 as at Nov 30, 2016, the last statement that shows a closing balance);

b.    $50,000.00 – unjustified invoice debits.  These were unexplained charges debited by Akirix, which Akirix has yet to explain.

c.    $46,775.00 – disputed or irregular transaction debits (reflected on statements from October 11, 2016 to December 22, 2016), which Akirix has yet to adequately justify or resolve;

d.    $15,360.00 – unjustified and unsupported "bank fees" charged in November and December, 2016;

16.    Worldclear contacted Akirix on numerous occasions to determine the reasons for the various charges and shortfalls detailed above.  However, Akirix has failed to provide any reasonable explanation for the charges.

17.    Akirix has also failed to pay the remaining statement balance to Worldclear despite previously agreeing to do so by January 3, 2017 in the Closure Agreement, which was unilaterally prepared by Akirix.  See Exhibit A.

18.     Additionally, instead of returning funds to Worldclear or completing transactions as promised, Akirix went to third-party customers of Worldclear and, in essence, held their funds "hostage."  Specifically, Akirix contacted Worldclear customers and informed those customers that it would only complete a given transaction or refund the customer's funds if the customer paid Akirix an administrative fee or purchased an insurance policy from Akirix or a related party.

Worldclear is aware of two such cases: one where Akirix extorted $100,000 from Worldclear customer Choice Bank Limited, who in turn passed on the loss to their customer Paxum, Inc., and one from Strategic Bank Limited where Akirix extorted $260,000.

19.     As a result of Akirix's actions, and of Akirix's unlawful retention of funds, Worldclear was forced to seek reorganization in its home country of New Zealand.

20.     As a result of Akirix's actions, Worldclear was damaged as more specifically set forth below.

21.     At all relevant times, Akirix's actions took place within the United States.

**COUNT I**
**BREACH OF FIDUCIARY DUTY**

22.     Worldclear restates the allegations in paragraphs 1-21 above as if fully set forth herein.

23.     During the balance of the relationship between Worldclear and Akirix, Akirix acted as an escrow agent for Worldclear.  (See D.E. 5 at p. 2).

24.     Pursuant to the Closure Agreement, Akirix agreed to hold Worldclear's funds "in trust" for Worldclear.  See Exhibit A at para. 10.

25.     Because it acted as Worldclear's escrow agent, and because it agreed to hold Worldclear's funds "in trust," Akirix owed Worldclear a fiduciary duty as an escrow agent and a trustee.

26.     During the course of the parties' relationship, and especially after Akirix cut off Worldclear's access to Akirix's systems, Worldclear relied on Akirix to correctly account for funds held by Akirix on behalf of, and in trust for, Worldclear.

27.     During the course of the parties' relationship, and especially after Akirix cut off

Worldclear's access to Akirix's systems, Akirix had the ability to exercise influence over Worldclear as Akirix had sole access to, and sole control over, Worldclear's funds.

28. After Akirix cut off Worldclear's access to Akirix's systems, Akirix was in a dominant position over Worldclear, as Worldclear had no choice but to rely on Akirix for information.

29. Prior to the execution of the Closure Agreement, Akirix breached its fiduciary duty to Worldclear by failing to properly notify and account for funds it held as an escrow agent on Worldclear's behalf.

30. Following execution of the Closure Agreement, Akirix breached its duty to Worldclear by failing to keep or provide adequate records relating to the funds in the trust account, or by failing to account for expenses and transactions when questions relating to that account were raised by Worldclear.

31. Akirix also breached its fiduciary duty to Worldclear by extorting Worldclear clients for fees, and by transmitting funds held in trust for Worldclear to those clients for Akirix's own financial benefit.

32. As an actual and proximate result of Akirix's actions, Worldclear was damaged in an amount of at least $4,330,196.79.

## COUNT II
## BREACH OF CONTRACT
## (INITIAL AGREEMENT)

33. Worldclear restates the allegations in paragraphs 1-21 above as if fully set forth herein.

34. Worldclear and Akirix entered into an agreement under which Akirix agreed to

provide transaction payment services for Worldclear. The agreement was entered into by virtue of Worldclear signing up for Akirix's services via Worldclear's website. However, no express terms of service were agreed upon between the parties.

35. In fact, the terms of service on the website at the time related to use of the website and Akirix's liability for website and transaction delays. Upon information and belief, the Terms of Service attached hereto as Exhibit B constitute the Terms of Service listed on Akirix's website.

36. Because Worldclear set up an account with Akirix under which Akirix would provide escrow services, and because Akirix accepted Worldclear as a client, accepted Worldclear's funds, allowed Worldclear access to its systems (for a time), and otherwise engaged in business with Worldclear, Akirix expressly or impliedly agreed to receive payments and hold them in escrow for Worldclear, to transmit Worldclear's funds held in Akirix's accounts based on Worldclear's instructions, and to account for Worldclear's funds.

37. Under this agreement, and also under the implied covenant of good faith and fair dealing, Akirix agreed not to excessively charge Worldclear arbitrary fees, excessive fees, or fees for non-existent services.

38. Under this agreement, and also under the implied covenant of good faith and fair dealing, Akirix also agreed to hold Worldclear's funds in escrow, and to not wrongfully retain or misappropriate said funds.

39. Akirix breached its agreement with Worldclear by failing to provide explanation for charges, failing to reconcile wire transfers that were incorrect, failing to account for wire transfers that were returned, failing to refund returned funds to Worldclear, and by otherwise

misappropriating funds belonging to Worldclear.

40.    Akirix further breached the implied covenant of good faith and fair dealing by contacting Worldclear customers directly and extorting funds from them, as opposed to simply allowing Worldclear to return the client funds utilizing Worldclear's systems.

41.    As an actual and proximate result of Akirix's actions, Worldclear was damaged in an amount of at least $4,330,196.79.

## COUNT III
## BREACH OF CONTRACT
## (CLOSURE AGREEMENT)

42.    Worldclear restates the allegations in paragraphs 1-21 above as if fully set forth herein.

43.    On or about October 3, 2016, Akirix and Worldclear entered into the Closure Agreement.

44.    The Closure Agreement provided that, among other things, Akirix would hold Worldclear's funds in trust and would refund all of Worldclear's funds held by Akirix by January 3, 2016.

45.    Akirix violated this agreement by not holding Worldclear's funds in trust, by not refunding Worldclear's funds as promised, and by otherwise failing to properly account for Worldclear's funds.

46.    Akirix further breached the implied covenant of good faith and fair dealing by contacting Worldclear customers directly and extorting funds from them for Akirix's own benefit, as opposed to simply returning funds to Worldclear as required by the Closure Agreement.

47. As an actual and proximate result of Akirix's actions, Worldclear was damaged in an amount of at least $4,330,196.79.

## COUNT IV
## UNJUST ENRICHMENT
### (alternative to Counts II and III)

48. Worldclear restates the allegations in paragraphs 1-20 above as if fully set forth herein.

49. In the event this Court finds that no contract existed between the parties, Akirix has retained funds belonging to Worldclear without justification, and has accepted the benefit of Worldclear's deposit of, and Akirix's retention of, those funds.

50. Akirix had knowledge of, and voluntarily accepted, this benefit.

51. Akirix has failed to provide anything in return for the benefit conferred.

52. Under the circumstances, it would be inequitable for Akirix to accept and retain the benefit of Worldclear's funds in return for nothing.

42. As an actual and proximate result of Akirix's actions, Worldclear was damaged in an amount of at least $4,330,196.79.

## Prayer for Relief

WHEREFORE, Plaintiff, Worldclear, requests the following relief from this Court:

A. For Count I, damages from Akirix in an amount of at least $4,330,196.79, a full accounting of all transactions related to the Worldclear account with Akirix, and punitive damages as allowed by law;

B. For Count II, damages from Akirix in an amount of at least $4,330,196.79;

C. For Count III, damages from Akirix in an amount of at least $4,330,196.79;

D. For Count IV, as an alternative to Counts I, II, or III, damages from Akirix in an amount of at least $4,330,196.79, and establishment of a constructive trust over all Worldclear funds held by Akirix;

E. For all counts on which recovery is granted, prejudgment and post-judgment interest at the statutory rate;

F. Attorney fees where allowed by law;

G. Such other relief as this Court deems just and proper.

## **Demand for Jury Trial**

Worldclear hereby demands a jury trial on all claims so triable.


Dated: April 5, 2018

Marshall Socarras Grant

*/s/ J. Andrew Fine*_____
J. Andrew Fine


Hatch, James & Dodge, P.C.

*/s/ Mitchell A. Stephens*_____
Mitchell A. Stephens

*Attorneys for Worldclear Limited*

**EXHIBIT A**

# Account Closure Request and Settlement Agreement

This agreement is entered into by and between:

1. Akirix LLC of 1085 Wall Ave, Ogden, Utah 84404 United States ("AK") and;

2. Worldclear Limited of Level 10, 48 Ward Street, Hamilton, 3204 New Zealand ("WC")

Whereas; AK and WC have had a contractual relationship since the 16th February 2016, and both parties agree to terminating the relationship by mutual consent, pursuant to the terms of this Account Closure and settlement agreement.

It is therefore agreed between the parties:

3. WC by its execution of this agreement is requesting the immediate closure of all accounts it operates with AK

4. Any charges owing or outstanding to Akirix are to be deducted from any balance held by AK to be remitted back to WC upon account closure.

5. WC and AK agree that this agreement and its terms are confidential and each party agrees to not release any details, save if required to by law.

6. Each party agrees they have not relied on the other when deciding to execute this agreement

7. This agreement is subject to the laws of the state of Utah, USA.

8. WC agrees to indemnify and hold harmless AK for any claims against it, either actual or contemplated, howsoever caused or occasioned, arising out of the closing of its accounts, or the execution of this agreement.

9. This agreement is considered an annex to the existing terms and conditions of AK, as displayed on its website, and between AK and WC.

10. AK agrees to hold the balance of any WC accounts held by AK, in trust for a maximum period of 90 days, to allow WC to transfer its balances to other institutions in an orderly manner.

11. WC agrees that any balance held by AK at the end of 90 days, and pursuant to paragraph 10 above, must be transferred as a single payment.

12. WC agrees that any transfer made pursuant to this agreement must be made to an account or accounts either owned by WC or under its control.

11. Any transfer requests made by WC must be in writing and by email, and sent to John@akirix.com

12. Transfers ordered pursuant to this agreement by WC will be fulfilled by AK within twenty four hours and at no cost.

13. This agreement constitutes the final agreement and full and final settlement between the parties, for all or any claims against each other, either actual or contemplated, howsoever caused or occasioned.

Signed as a deed by;

1. Jack Archie Lewis for and on behalf of Akirix LLc

    signature ...... *Jack A. [signature]* ......

Date .3./.OCT..... / 2016

Witnessed by ......... You Li ...............................print name

signature... *[signature]* ...........

of ...Draper.....Utah....

.....U.S.A.................

Signed as a deed by;

2. David Hillary for and on behalf of World-Clear Limited

    signature...... *[signature]* .............................

Date .3./.10......... / 2016

Witnessed by ......... Christine Kirton ...............print name

signature .......... *[signature]* ....... Date .3./..10........./ 2016

of ...Hamilton, Waikat.....

....New Zealand.................

**EXHIBIT B**

# AKIRIX

# TERMS & CONDITIONS

The terms herein apply to all users of AKIRIX.COM for any purpose. Additionally, Akirix LLc clients are required to adhere to additional agreements and conditions as part of the application process. Please read all agreements and documents carefully and entirely.

By accessing this website, users agree to be bound to the terms and conditions of all agreements and forms as well as the terms and conditions listed here on below. Users must also be aware that all terms and conditions are subject to change without notice, however Akirix clients will be directly notified any time a change is made.

Unauthorized use of our systems or this website, including but not limited to unauthorized entry into our systems, misuse of user names and passwords, or misuse of any information posted to this website, is strictly prohibited.

Subject to our Privacy Terms and subject to agreements which relate to specific services and products, which may be more restrictive, Akirix, LLC ("Akirix") may disclose and transfer any information you provide through this website to: (i) any company within Akirix, its affiliates, agents or contract parties; (ii) to any other person or entity with your consent; or (iii) if we have a right or duty to disclose or are permitted or compelled to so disclose such information by law. Subject to our Privacy Terms and more specific and restrictive agreements to which we may be a party, you consent to the transmission, transfer or processing of such information to, or through, any country in the world, as Akirix deems necessary or appropriate, and by using and providing information through this website you agree to such transfers.

Use of this website may be monitored, tracked and recorded. Anyone using this website expressly consents to such monitoring, tracking and recording. You are responsible for being familiar with the current version of these Terms and Conditions posted on the website during each session.



# Intellectual Property Rights

All content of this website and our systems, including text, images, designs, procedures and modes of operation are owned by Akirix or one of its subsidiaries or affiliates. Except as otherwise expressly stated herein, they may not be copied, displayed, transmitted, disseminated, licensed, altered, stored, or otherwise used, in whole or in part, in any manner without Akirix's prior written consent, except as otherwise permitted by the Copyright Act of 1976, as amended, and only with notices of Akirix's rights. You shall not make any posted materials or information available via the internet or via any other electronic means of access.

WWe always appreciate your helpful comments and suggestions, however, if you submit any unsolicited ideas, suggestions, comments or materials ("Submitted Materials"), Akirix shall not be restricted or prevented from purchasing, developing, creating, or using products, services, plans and ideas for any purpose, whether or not based on or derived from the Submitted Materials. Akirix shall be free to copy, use, modify, disclose and distribute any Submitted Materials without restriction for any purposes whatsoever, commercial or otherwise, without compensation to you.

In addition to our copyrights, the term "Akirix" and all representations and derivations thereof constitute our service marks and trademarks. You shall not use our service marks or trade marks for any purpose without our express and prior written permission. You shall not include our service marks or trade marks in any meta data or "hidden text" or other SEO process without our express and prior written consent.



# Website Content and Materials

The data and other information on this website is for informational purposes only.

While we believe it is reliable, we do not warrant its completeness, timeliness or accuracy. Information, products, services, and the terms and conditions related to products and services may change from time to time. The information on this website is not intended as an offer or solicitation for the purchase of any security or financial instrument or to provide any investment service or investment advice in any jurisdiction.

Products and services, fees, charges, and other terms, conditions and requirements may differ among geographic locations. Not all products and services may be offered at all locations.

Some of our related websites or pages within this website contain supplemental terms and conditions and additional disclosures and disclaimers, which are in addition to these terms and conditions, disclosures and disclaimers. In the event of a conflict, the supplemental terms and conditions and additional disclosures and disclaimers will govern for those sections or pages.

Currency values are always fluctuating. Further, the relative values of currencies fluctuate against other currencies. The amount of services that a buyer may obtain from a seller for a given amount of the buyer's currency and currency exchange rates may vary based on the timing and speed of each transaction.

You agree that: (i) you will not engage in any activities using or related to this website that are contrary to applicable law and regulation or the terms of any agreements you have with us, and (ii) where this website or any other website operated by Akirix requires identification for access, you will establish security procedures and controls to limit access to your password or other identifying information to authorized individuals. In circumstances where you are required to provide information to Akirix, whether for Akirix's use or the use of any governmental entity, you agree to provide full and accurate information.

You agree that you will not use any automated device, nor will you use any program or manual process to monitor or copy our web pages, data or content without our express and prior written consent.

WE MAY AMEND OR DISCONTINUE THE INFORMATION, PRODUCTS AND SERVICES DESCRIBED HEREIN, AT ANY TIME WITHOUT PRIOR NOTICE TO YOU, AND WITHOUT ANY LIABILITY TO YOU. ANY DATED INFORMATION IS PUBLISHED AS OF ITS DATE ONLY OR, IF NO DATE IS STATED, THE DATE OF FIRST POSTING. WE UNDERTAKE NO OBLIGATION OR RESPONSIBILITY TO UPDATE OR AMEND ANY INFORMATION ON THIS WEBSITE. WE RESERVE THE RIGHT TO TERMINATE ANY OR ALL WEBSITE OFFERINGS OR TRANSMISSIONS WITHOUT PRIOR NOTICE TO YOU. FURTHERMORE, NO DISTRIBUTION OR SOLICITATION IS MADE BY US TO ANY PERSON TO USE THIS WEBSITE OR THE INFORMATION, PRODUCTS OR SERVICES IN JURISDICTIONS WHERE THE PROVISION OF THIS WEBSITE AND SUCH INFORMATION, PRODUCTS OR SERVICES IS PROHIBITED BY LAW.



# No Warranty of Non-Disruption

Our servers are maintained in safe and secure commercial facilities. Akirix has access to bandwidth from multiple sources, however, access to this website may, from time to time, be unavailable, delayed, limited or slowed due to circumstances beyond our control or for scheduled maintenance. In such events, you may be unable to transmit your transaction or transfer instructions, or your instructions may not be promptly executed. If this causes you to suffer a loss, Akirix will not be liable for the loss. In the event of maintenance of the website and/or platform, Akirix will provide notices to the client in a timely manner.



# Links to Other Sites

Links to other websites are provided solely as a courtesy to users of this website. We have no control over the content on websites offered by others and we make no warranties, either expressed or implied, concerning your use of or inability to use such site, the content of such site, including the accuracy, completeness, reliability, or suitability thereof for any particular purpose, nor do we warrant that such site or content is free from any claims of copyright, trademark, or other infringement of the rights of third parties. We cannot assure you that any such site or content is free from viruses or other contamination. We do not guarantee the authenticity of documents on the Internet. Links to unaffiliated sites do not imply, and we expressly disclaim,any endorsement of or responsibility for the opinions, ideas, products, information, or services offered at such sites.



# Limitation of Liability, Indemnity, Fees & Charges

THIS WEBSITE IS PROVIDED "AS IS" AND "AS AVAILABLE". AKIRIX: DOES NOT PROVIDE ANY WARRANTIES AND REPRESENTATIONS REGARDING THE WEBSITE, DISCLAIMS ALL WARRANTIES AND REPRESENTATIONS OF ANY KIND WITH REGARD TO THE WEBSITE, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY, NON-INFRINGEMENT OF THIRD PARTY RIGHTS, FREEDOM FROM VIRUSES OR OTHER HARMFUL CODE, OR FITNESS FOR A PARTICULAR PURPOSE; DOES NOT WARRANT THE ACCURACY, ADEQUACY, OR COMPLETENESS OF THE INFORMATION AND MATERIALS CONTAINED ON THE WEBSITE AND EXPRESSLY DISCLAIMS LIABILITY FOR ERRORS OR OMISSIONS IN THE MATERIALS AND INFORMATION; AND WILL NOT BE LIABLE FOR ANY DELAY, DIFFICULTY IN USE, COMPUTER VIRUSES, MALICIOUS CODE OR OTHER DEFECT IN THIS WEBSITE, ANY INCOMPATIBILITY BETWEEN THE WEBSITE AND THE USER'S FILES AND THE USER'S BROWSER OR OTHER SITE ACCESSING PROGRAM, OR ANY OTHER PROBLEMS EXPERIENCED BY THE USER DUE TO CAUSES BEYOND OUR CONTROL.

NO LICENSE TO THE USER IS IMPLIED IN THESE DISCLAIMERS.
UNDER NO CIRCUMSTANCES WILL WE BE LIABLE FOR ANY LOST PROFITS, LOST
OPPORTUNITY OR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, SPECIAL,
PUNITIVE, OR EXEMPLARY DAMAGES ARISING OUT OF ANY USE OF OR INABILITY TO
USE THE WEBSITE OR ANY PORTION THEREOF, REGARDLESS OF WHETHER WE
HAVE BEEN APPRISED OF THE LIKELIHOOD OF SUCH DAMAGES OCCURRING AND
REGARDLESS OF THE FORM OF ACTION, WHETHER IN CONTRACT, WARRANTY,
TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, OR OTHERWISE.

YOU AGREE THAT: YOU WILL INDEMNIFY US, PURSUANT TO THESE TERMS AND
CONDITIONS, TO THE FULLEST EXTENT POSSIBLE, AND ON AN INDEMNITY BASIS,
FOR ANY IMMEDIATE OR FUTURE LOSSES CAUSED OR OCCASIONED, BY YOUR USE
OF THE WEBSITE, HOWSOEVER CAUSED, IF YOU FAIL TO ADHERE TO THE TERMS
AND CONDITIONS HEREIN, INCLUDING BUT NOT LIMITED TO, USING THE WEBSITE
OR SERVICE FOR THE SUPPLY OF THIRD PARTY SERVICES, OR ANY SERVICE THAT
CONTRAVENES ANY RULE OF LAW OR REGULATION IN ANY RELEVANT
JURISDICTION, Failing Or refusing to provide information requested for KYC AML and
CFT purposes, SUCH LOSS MAY BE, LOSS OF PROJECTED PROFITS, LOSS OF
OPPORTUNITY, ANY DIRECT LOSS, INCLUDING THE COST OF ANY LEGAL FEES, OR
ANY LOSS OF A BUSINESS RELATIONSHIP OR ANY LOSS OF REPUTATION, OR ANY
ADDITIONAL COSTS INCURRED AS A RESULT OF YOUR USE OF THIS WEBSITE OR
ASSOCIATED SERVICES.

YOU AGREE THAT; IF YOU FAIL TO PROVIDE INFORMATION REQUESTED FOR KYC /
AML / CFT PURPOSES, THAT SUCH AN ACT WOULD CAUSE US SUFFICIENT
CONCERN THAT WE WOULD BE COMPELLED TO CHECK ALL TRANSACTIONS MADE
OR PARTICIPATED IN BY YOU, AS SUCH, YOU WILL INCUR A DISCREPANCY FEE FOR
EACH TRANSACTION AUDITED.

YOU AGREE THAT; WE MAY DEDUCT FROM YOUR ACCOUNTS, WITHOUT SET-OFF OR
DEDUCTION, ANY FEES OR CHARGES OWING TO US UNDER THESE TERMS AND
CONDITIONS.

YOU AGREE THAT; YOU WILL PAY OUR REASONABLE LEGAL COSTS IN THE EVENT
THAT WE ARE COMPELLED TO EITHER ISSUE OR DEFEND ANY PROCEEDINGS
AGAINST OR INCLUDING YOU, SUCH COST TO BE TREATED AS CHARGES.

# Enforceability and Governing Law

In the event any of the terms or provisions of these Terms and Conditions shall be held to be unenforceable, the remaining terms and provisions shall be unimpaired and the unenforceable term or provision shall be replaced by such enforceable term or provision as comes closest to the intention underlying the unenforceable term or provision. These Terms and Conditions shall be subject to any other agreements you have entered into with Akirix. The user's access to and use of the website, and the terms of this disclaimer are governed by the laws of the State of Utah.

Any action against Akirix arising from or relating to your access to and use of the website and the provisions of these Terms and Conditions must be brought by you in state or federal court located in the State of Utah. You consent to the jurisdiction and venue of the state and federal courts located within the State of Utah for the adjudication of all claims by Akirix against you arising from or relating to your access to and use of the website and the provisions of these Terms and Conditions.

FIND YOUR WAY

HOME (index.html)

ABOUT (/about)

CAREERS (/careers)

INVESTORS (/investors)

PRICING (/pricing)

CONTACT (/contact)

LEGAL (/legal)

FAQ (/faq)

REPORT FRAUD (/how-to-report-fraud)

CONTACT US

**AKIRIX LLC.**
1085 Wall Street
Ogden, UT 84404
U.S.A.

Phone: +1.801.305.4300 (tel:+18013054300)
Fax: +1.801.305.4050 (tel:+18013054050)
support@akirix.com (mailto:support@akirix.com)

SOCIAL



(https://www.faceb (https://www.linked

(http://twitter.com/a
(http://www.bbb.org/
reviews/escrow-
service/akirix-
l-
l-
c-
in-
ogden-
ut-
22357789/)

**CERTIFICATE OF SERVICE**

I hereby certify on this 5th[th] day of April, 2018, I caused a true and correct copy

of the foregoing AMENDED COMPLAINT to be filed via the Court's electronic filing

system, which automatically provides notice of the filing to the following:

J. Ryan Mitchell (9362)
Andrew V. Collins (11544)
MITCHELL BARLOW & MANSFIELD, P.C.
Nine Exchange Place, Suite 600
Salt Lake City, Utah 84111
Telephone: (801) 998-8888
Facsimile: (801) 998-8077
Email: rmitchell@mbmlawyers.com
acollins@mbmlawyers.com
*Attorneys for Defendant Akirix, LLC*

Hatch, James & Dodge, P.C.

*/s/ Mitchell A. Stephens*
Mitchell A. Stephens