J. Andrew Fine (Pro Hac Vice)
Marshall Grant, PLLC
197 S. Federal Hwy, Suite 200
Boca Raton, FL  33432
Telephone: (561) 325-6402
Email:  afine@msglaw.com

Mitchell A. Stephens (11775)
Hatch, James & Dodge, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Email:  mjames@hjdlaw.com
        mstephens@hjdlaw.com
        jjames@hjdlaw.com

*Attorneys for Worldclear Limited*

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF UTAH

| | |
|---|---|
| WORLDCLEAR LIMITED,<br><br>　　　　　Plaintiff,<br>v.<br><br>AKIRIX, LLC,<br><br>　　　　　Defendant. | **SECOND AMENDED COMPLAINT**<br><br>Civil No.  1:17-cv-00155-HCN-EJF<br><br>Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Evelyn J. Furse<br><br>(Jury Trial Demanded) |

COMES NOW, the Plaintiff, Worldclear Limited, ("Worldclear"), by and through the

undersigned, and hereby sues Defendant Akirix, LLC ("Akirix"), and says:

**Introduction**

1.　　Worldclear Limited brings this action against Akirix for misappropriating funds

entrusted to Akirix by Worldclear.  As further detailed, Akirix provided transactional assistance

to customers involved in international financial transactions.  Akirix provided an online payment system for customers to monitor transactions, and also provided a "nested" account whereby customers could undertake financial transactions for third-parties when the third-parties did not have easy access to the United States banking system.  For example, if third-party "X" in a foreign country sought to wire funds into the United States but could not, X would contact Company "A," who had a certain amount of funds held by Akirix or in an Akirix account, and who had access to the Akirix online system.  Company A would receive funds from Customer X outside of the United States, and would in turn instruct Akirix to complete the transaction with Company A's funds held within the United States.  In this way, Company A never actually transmitted Customer X's funds to the United States; however, Customer X still completed a wire transfer according to that customer's needs.  In the instant case, Worldclear was a customer of Akirix.

### Parties

2.      Worldclear is a limited company formed and existing under the laws of New Zealand, with its main office in Hamilton, New Zealand.  All members of the company are residents and citizens of New Zealand.

3.      Akirix is a limited liability company formed and existing under the laws of Utah, with its main office in Ogden, Utah.  Upon information and belief, the members of the limited liability company are all residents of Utah and citizens of the United States.

### Jurisdiction and Venue

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332, as the controversy is between a foreign entity and a United States limited liability company, and the amount in

controversy exceeds $75,000.00.  Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b).

## Facts

5.      Worldclear and Akirix entered into an agreement, by virtue of the establishment of a Worldclear account with Akirix, on or about February 16, 2016, whereby Akirix would provide escrow services and process wire transfers on behalf of Worldclear.

6.      Under this agreement, Akirix would act as an escrow agent and payment facilitator for Worldclear:  Worldclear would receive a wire request from a third-party Worldclear client located outside the United States, and would in turn direct Akirix to make a transfer in relation to the client request, and Akirix would ultimately make said transfer from a separate fund in return for a fee.  As a result, Worldclear and its clients could effectively make wire transfers without the need for "correspondent" banking relationships within the United States.  Inward wire services were also offered whereby funds could be sent to Akirix and appear in Worldclear's accounts in the Akirix system, which Worldclear would then credit to its customers.

7.      Under this agreement, Worldclear also had access to an Akirix-provided online system whereby Worldclear could track wires and reconcile its Akirix-held accounts with its customer accounts and accounting systems outside the USA.

8.      A necessary component of this arrangement was for Akirix to hold a certain amount of Worldclear's funds at all times so that Akirix could facilitate the transfers requested by Worldclear without undue delay.  In this sense, Akirix acted as an "escrow agent."

9.      Akirix facilitated Worldclear's transfers from approximately February 2016 until late September 2016.

10.    On September 28, 2016, claiming difficulty with its own bank, Akirix cut off Worldclear's access to the Akirix system, thereby depriving Worldclear of real-time information relating to transfers, and informed Worldclear that it would no longer continue providing transactional services to Worldclear.

11.    The parties then signed an "Account Closure Request and Settlement Agreement" ("Closure Agreement") on or about October 3, 2016, and on October 4, 2016, Akirix supposedly closed the Worldclear account.  See Exhibit A.  Upon information and belief, this is the only document executed between the parties.

12.    As part of the Closure Agreement, Akirix agreed that it would hold Worldclear's funds "in trust."  At the time of the closure, and when Akirix cut off Worldclear's access to Akirix's online account information, Akirix held or should have held approximately $4,500,000.00 of funds due to Worldclear for the benefit of Worldclear's clients.

13.    After the closure of the Worldclear account, it became clear that Akirix could not account for a large amount of money due to Worldclear.  On Dec 8, 2016, Worldclear inquired about the discrepancy, Akirix informed Worldclear that it planned to charge a large amount of unjustified fees totaling nearly $1 million to "review" Worldclear transactions.

14.    Akirix also provided incomplete statements to Worldclear, and ceased providing Worldclear with any information whatsoever in December 2016.

15.    Worldclear analyzed the information it had, and after comparing the transfers to the account statements provided by Akirix, Worldclear realized that there was a large shortfall between Worldclear's stated balance and the amount Akirix should have held on behalf of Worldclear.  Specifically, Worldclear discovered a shortfall of 4,330,196.79, as follows:

a.    $4,217,811.79 – current statement balance, calculated as all credits less all debits, based on statements provided by Akirix to December 31, 2016 (the daily balances on the statements have accumulating discrepancies that add up to $4,114,294.98 as at Nov 30, 2016, the last statement that shows a closing balance);

b.    $50,000.00 – unjustified invoice debits.  These were unexplained charges debited by Akirix, which Akirix has yet to explain.

c.    $46,775.00 – disputed or irregular transaction debits (reflected on statements from October 11, 2016 to December 22, 2016), which Akirix has yet to adequately justify or resolve;

d.    $15,360.00 – unjustified and unsupported "bank fees" charged in November and December, 2016;

16.    Worldclear contacted Akirix on numerous occasions to determine the reasons for the various charges and shortfalls detailed above.  However, Akirix has failed to provide any reasonable explanation for the charges.

17.    Akirix has also failed to pay the remaining statement balance to Worldclear despite previously agreeing to do so by January 3, 2017 in the Closure Agreement, which was unilaterally prepared by Akirix.  See Exhibit A.

18.    Additionally, instead of returning funds to Worldclear or completing transactions as promised, Akirix went to third-party customers of Worldclear and, in essence, held their funds "hostage."  Specifically, Akirix contacted Worldclear customers and informed those customers that it would only complete a given transaction or refund the customer's funds if the customer paid Akirix an administrative fee or purchased an insurance policy from Akirix or a related party.

Worldclear is aware of two such cases: one where Akirix extorted $100,000 from Worldclear customer Choice Bank Limited, who in turn passed on the loss to their customer Paxum, Inc., and one from Strategic Bank Limited where Akirix extorted $260,000.

19.    As a result of Akirix's actions, and of Akirix's unlawful retention of funds, Worldclear was forced to seek reorganization in its home country of New Zealand.

20.    As a result of Akirix's actions, Worldclear was damaged as more specifically set forth below.

21.    At all relevant times, Akirix's actions took place within the United States.

**COUNT I**
**BREACH OF FIDUCIARY DUTY**

22.    Worldclear restates the allegations in paragraphs 1-21 above as if fully set forth herein.

23.    During the balance of the relationship between Worldclear and Akirix, Akirix acted as an escrow agent for Worldclear.  (See D.E. 5 at p. 2).

24.    Pursuant to the Closure Agreement, Akirix agreed to hold Worldclear's funds "in trust" for Worldclear.  See Exhibit A at para. 10.

25.    Because it acted as Worldclear's escrow agent, and because it agreed to hold Worldclear's funds "in trust," Akirix owed Worldclear a fiduciary duty as an escrow agent and a trustee.

26.    During the course of the parties' relationship, and especially after Akirix cut off Worldclear's access to Akirix's systems, Worldclear relied on Akirix to correctly account for funds held by Akirix on behalf of, and in trust for, Worldclear.

27.    During the course of the parties' relationship, and especially after Akirix cut off

Worldclear's access to Akirix's systems, Akirix had the ability to exercise influence over Worldclear as Akirix had sole access to, and sole control over, Worldclear's funds.

28.     After Akirix cut off Worldclear's access to Akirix's systems, Akirix was in a dominant position over Worldclear, as Worldclear had no choice but to rely on Akirix for information.

29.     Prior to the execution of the Closure Agreement, Akirix breached its fiduciary duty to Worldclear by failing to properly notify and account for funds it held as an escrow agent on Worldclear's behalf.

30.     Following execution of the Closure Agreement, Akirix breached its duty to Worldclear by failing to keep or provide adequate records relating to the funds in the trust account, or by failing to account for expenses and transactions when questions relating to that account were raised by Worldclear.

31.     Akirix also breached its fiduciary duty to Worldclear by extorting Worldclear clients for fees, and by transmitting funds held in trust for Worldclear to those clients for Akirix's own financial benefit.

32.     As an actual and proximate result of Akirix's actions, Worldclear was damaged in an amount of at least $4,330,196.79.

**COUNT II**
**BREACH OF CONTRACT**
**(INITIAL AGREEMENT)**

33.     Worldclear restates the allegations in paragraphs 1-21 above as if fully set forth herein.

34.     Worldclear and Akirix entered into an agreement under which Akirix agreed to

provide transaction payment services for Worldclear.  The agreement was entered into by virtue of Worldclear signing up for Akirix's services via Worldclear's website.  However, no express terms of service were agreed upon between the parties.

35.    In fact, the terms of service on the website at the time related to use of the website and Akirix's liability for website and transaction delays.  Upon information and belief, the Terms of Service attached hereto as Exhibit B constitute the Terms of Service listed on Akirix's website.

36.    Because Worldclear set up an account with Akirix under which Akirix would provide escrow services, and because Akirix accepted Worldclear as a client, accepted Worldclear's funds, allowed Worldclear access to its systems (for a time), and otherwise engaged in business with Worldclear, Akirix expressly or impliedly agreed to receive payments and hold them in escrow for Worldclear, to transmit Worldclear's funds held in Akirix's accounts based on Worldclear's instructions, and to account for Worldclear's funds.

37.    Under this agreement, and also under the implied covenant of good faith and fair dealing, Akirix agreed not to excessively charge Worldclear arbitrary fees, excessive fees, or fees for non-existent services.

38.    Under this agreement, and also under the implied covenant of good faith and fair dealing, Akirix also agreed to hold Worldclear's funds in escrow, and to not wrongfully retain or misappropriate said funds.

39.    Akirix breached its agreement with Worldclear by failing to provide explanation for charges, failing to reconcile wire transfers that were incorrect, failing to account for wire transfers that were returned, failing to refund returned funds to Worldclear, and by otherwise

misappropriating funds belonging to Worldclear.

40.    Akirix further breached the implied covenant of good faith and fair dealing by contacting Worldclear customers directly and extorting funds from them, as opposed to simply allowing Worldclear to return the client funds utilizing Worldclear's systems.

41.    As an actual and proximate result of Akirix's actions, Worldclear was damaged in an amount of at least $4,330,196.79.

**COUNT III**
**BREACH OF CONTRACT**
**(CLOSURE AGREEMENT)**

42.    Worldclear restates the allegations in paragraphs 1-21 above as if fully set forth herein.

43.    On or about October 3, 2016, Akirix and Worldclear entered into the Closure Agreement.

44.    The Closure Agreement provided that, among other things, Akirix would hold Worldclear's funds in trust and would refund all of Worldclear's funds held by Akirix by January 3, 2016.

45.    Akirix violated this agreement by not holding Worldclear's funds in trust, by not refunding Worldclear's funds as promised, and by otherwise failing to properly account for Worldclear's funds.

46.    Akirix further breached the implied covenant of good faith and fair dealing by contacting Worldclear customers directly and extorting funds from them for Akirix's own benefit, as opposed to simply returning funds to Worldclear as required by the Closure Agreement.

47.    As an actual and proximate result of Akirix's actions, Worldclear was damaged in an amount of at least $4,330,196.79.

**COUNT IV**
**UNJUST ENRICHMENT**
**(alternative to Counts II and III)**

48.    Worldclear restates the allegations in paragraphs 1-20 above as if fully set forth herein.

49.    In the event this Court finds that no contract existed between the parties, Akirix has retained funds belonging to Worldclear without justification, and has accepted the benefit of Worldclear's deposit of, and Akirix's retention of, those funds.

50.    Akirix had knowledge of, and voluntarily accepted, this benefit.

51.    Akirix has failed to provide anything in return for the benefit conferred.

52.    Under the circumstances, it would be inequitable for Akirix to accept and retain the benefit of Worldclear's funds in return for nothing.

42.    As an actual and proximate result of Akirix's actions, Worldclear was damaged in an amount of at least $4,330,196.79.

**Prayer for Relief**

WHEREFORE, Plaintiff, Worldclear, requests the following relief from this Court:

A.    For Count I, damages from Akirix in an amount of at least $4,330,196.79, a full accounting of all transactions related to the Worldclear account with Akirix, and punitive damages as allowed by law;

B.    For Count II, damages from Akirix in an amount of at least $4,330,196.79;

C.    For Count III, damages from Akirix in an amount of at least $4,330,196.79;

D.    For Count IV, as an alternative to Counts I, II, or III, damages from Akirix in an amount of at least $4,330,196.79, and establishment of a constructive trust over all Worldclear funds held by Akirix;

E.    For all counts on which recovery is granted, prejudgment and post-judgment interest at the statutory rate;

F.    Attorney fees where allowed by law;

G.    Such other relief as this Court deems just and proper.

### Demand for Jury Trial

Worldclear hereby demands a jury trial on all claims so triable.


Dated:  March 24, 2020


                              Respectfully submitted,


                              */s/ Mitchell A. Stephens*
                              Mitchell A. Stephens
                              HATCH JAMES & DODGE, P.C.


                              J. Andrew Fine
                              MARSHALL SOCARRAS GRANT

                              *Attorneys for Worldclear Limited*