IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

_____
                                )
Worldclear Limited,             )
                                )
        Plaintiff,              )
                                )   Case No. 1:17-cv-00155-HCN-DAO
vs.                             )
                                )
Akirix,                         )
                                )
        Defendant.             )
_____)

**STATUS AND SCHEDULING CONFERENCE BEFORE THE HONORABLE**

**JUDGE HOWARD C. NIELSON, JR.**


October 30, 2024


Time:  1:30 p.m. to 2:40 p.m.


Reported by Teena Green, RPR, CRR, CBC

        Orrin G. Hatch United States Courthouse
        351 South West Temple, 7.430
        Salt Lake City, Utah   84101
        (801) 910-4092
        teena_green@utd.uscourts.gov

1                           **APPEARANCES**

2     FOR THE PLAINTIFF:

3     MITCHELL A. STEPHENS
      JAMES DODGE RUSSELL & STEPHENS PC
4     10 West Broadway, Suite 400
      Salt Lake City, UT 84101
5     (801) 363-6363
      mstephens@jdrslaw.com
6
      J. ANDREW FINE
7     FINE COUNSEL
      115 East Main Street
8     Durham, NC 27701
      (919) 307-6311
9     jaf@finecounsel.law

10    FOR THE DEFENDANT:

11    JOHN W. MACKAY
      RAY QUINNEY & NEBEKER PC
12    36 South State Street, Suite 1400
      PO Box 45385
13    Salt Lake city, UT 84145-0385
      (801) 532-1500
14    jmackay@rqn.com

15

16

17

18

19

20

21

22

23

24

25

```
1    October 30, 2024                                    1:30 p.m.
2                    P R O C E E D I N G S
3         THE COURT:  All right.  Good afternoon.  We're here
4    for a status conference or a scheduling conference in
5    Worldclear Limited versus Akirix.  That's Case No. 1:17-cv-155.
6         The purpose of this hearing is to discuss trial
7    logistics and possibly to set a trial date.  We will begin with
8    appearances.
9         First, counsel for Worldclear and Mr. Hillary.
10        MR. FINE:  Good afternoon, Your Honor.  Mitch
11   Stephens from James Dodge, Russell & Stephens, here in Utah on
12   behalf of Worldclear and David Hillary, although I believe
13   Mr. Hillary was personally dismissed previously.
14        THE COURT:  I think you might be right.  And I
15   apologize for that.  It has been a while since I've been
16   involved in he intricacies in this case.
17        MR. FINE:  For all of us, no problem.  I should also
18   note I'm joined by my colleague, Andrew Fine, and who is
19   admitted in the case pro hoc.
20        THE COURT:  All right.  And welcome, Mr. Stephens,
21   welcome, Mr. Fine.
22        MR. FINE:  Good afternoon.
23        THE COURT:  Counsel for Akirix, and I might be saying
24   that wrong.  If I am, I apologize.
25        MR. MACKAY:  John Mackey on behalf of Akirix, Ray
```

1   Quinney & Nebeker.  And it took me two months to learn to say
2   the name, and I represent them so I -- it's Akirix, and we
3   understand if it gets mispronounced.
4         Your Honor, I would make a note for the record.
5   Mr. Anderson apologizes that he can't be here today.  I'm pitch
6   hitting.  I have an appearance in this case on behalf of
7   Mr. Lewis, so I'm in the case, although on narrow grounds.  I
8   do represent Akirix in another matter.  And so if it pleases
9   the Court, Mr. Anderson and Akirix have agreed that I could
10  appear for this conference.
11        **THE COURT:**  All right.  I guess just one question
12  about that.
13        Do you have sufficient knowledge of Mr. Anderson's
14  calendar and so forth that you could address scheduling?
15        **MR. MACKAY:**  I asked him that specific question, and
16  I don't have specific knowledge for setting a trial date if
17  we're going any time soon.  We had expected and hoped that we
18  would talk about what it's going take to get to trial.  It's a
19  fairly technical case, and I'll speak to that later.
20        **THE COURT:**  Right.
21        **MR. MACKAY:**  And I think there's going to need to be
22  some discovery in the interim.
23        **THE COURT:**  All right.  Well, as I said, the purpose
24  of the hearing is to discuss trial logistics and possibly set a
25  trial date.  I understand that there's some preliminary things

1    we're going to have to go over.  So we'll -- thank you.  That's

2    all right with me, under the circumstances.

3              Mr. Fine, Mr. Stephens, is there any objection to

4    doing what we can with Mr. Mackey today?

5              **MR. FINE:**  No objection, Your Honor.

6              **THE COURT:**  All right.  Okay.  Well, given the age of

7    this case, I would like to bring it to resolution, now that the

8    stay has been lifted, as expeditiously as possible.

9    Unfortunately, however, I have a significant number of criminal

10   trials set for the next several months, and the Constitution

11   requires that I give priority to those trials.

12             And while I might be able to set a conditional trial

13   date earlier, and I'll talk about what I mean by that, I will

14   likely be unable to set a guaranteed trial date any earlier

15   than the fall, probably next September or later.  Though, as I

16   said, there might be some possibilities for a conditional date

17   earlier than that.

18             **MR. FINE:**  Your Honor, I don't know if you're

19   inviting comment at this point or --

20             **THE COURT:**  I wasn't, but if you have something --

21             **MR. FINE:**  I'll hold off.  That's fine.

22             **THE COURT:**  I was going to say, first of all, I

23   wanted to put this on the table.  And it's possible we talked

24   about some of these things before.  I know that after I ruled

25   on the summary judgment motion, I was planning to talk about

1  trial logistics, but I think the issue of Akirix's ownership

2  came up and we -- I think that kind of sidetracked things, and

3  I don't remember to the extent we had this discussion before.

4          But what I wanted to say, if both parties consent, it

5  would almost certainly be possible for a magistrate judge to

6  hold the trial much earlier than I could.  A magistrate judge

7  might even, and probably could, schedule the trial just to

8  begin as soon as the parties are ready.

9          Now, I don't want you to tell me your thoughts about

10  that option, the option of a consent trial before a magistrate

11  judge right now, but I would like you to consult with each

12  other and maybe file a status report within 30 days letting me

13  know whether the parties are interested in pursuing that option

14  and everyone consents.

15          If any of the parties do not consent to the option of

16  a trial before a magistrate judge, please tell me that as well

17  in the status report, but please don't tell me which party or

18  parties objected.

19          I want to emphasize, though, that because magistrate

20  judges are not allowed by statute to try felony criminal cases,

21  it does free up a lot of time on their dockets.  And we have

22  excellent magistrate judges in this district who could do a

23  terrific job of trying the case, and any of them could do it

24  almost certainly much faster than I could do it.

25          So I just wanted to put that option on the table.

```
 1    You're not required to consent to it, and it requires your
 2    affirmative consent, but please take it seriously and give that
 3    some thought.  But before we move further, again, as I said, I
 4    don't want to know whether you object or not, but are there any
 5    questions about that option just that you'd like to ask just so
 6    that -- you know, to assist with your consideration?
 7           MR. MACKAY:  Yes, Your Honor.  John Mackey.
 8           Is there an order of preference of the magistrates
 9    that would be assigned?  I just can't remember exactly how that
10    would happen.
11         THE COURT:  It would presumptively be the magistrate
12    judge who the case has been referred to.  I believe that's
13    Judge Oberg, if I recall correctly.  Though, you know, if the
14    parties agreed to request someone else, we likely would
15    accommodate that.  But the presumption would be the assigned
16    magistrate judge.  And as I said, I believe it's Judge Oberg in
17    this case.
18         MR. MACKAY:  Thank you.
19         THE COURT:  She's excellent.
20         MR. MACKAY:  Yes.
21         THE COURT:  She's had extensive trial experience.
22         MR. MACKAY:  Right.
23         THE COURT:  She's -- I mean as a practitioner,
24    because of the nature of her practice, she probably tried a lot
25    more cases than I did, so she's very good.
```

1    But in any event, any other questions about that

2  possibility?

3    **MR. FINE:**  None from us, Your Honor.

4    **THE COURT:**  Okay.  But, yeah, please take it

5  seriously, I think it could be a very effective way of getting

6  the case tried expeditiously.  But if you don't want that

7  option, that's all right, too.

8    Okay.  Second, I want to go through some additional

9  questions.  To the extent you don't know the answers today,

10  that's fine.  You can provide the answers in the status report

11  that I'm going to ask for in 30 days, the same one where you

12  address the possibility of a consent trial.  Or you can modify

13  or elaborate on any tentative answers you give today in the

14  status report or take them back or whatever.  But if you do

15  have impressions on these ones, I would like to hear them now.

16    First, would it make sense for the parties to engage

17  in any further settlement negotiations or mediation at this

18  point, in light of the rulings that I have made?  I know that I

19  have had made a number of rulings on summary judgment, I

20  think -- oh, it's been a while.  I'm not even going to try and

21  remember when the date was.

22    But the case was stayed soon thereafter and I don't

23  know whether or not you've had a chance to digest those things

24  and think through whether there's any kind of possibility of

25  settlement or mediation.

1         Do the parties have any thoughts about whether

2    that -- well, before I ask that, again, one thing our court

3    does that you may well be familiar with, but you may not, we

4    have a practice of, if the parties are willing or request to

5    refer a case to a magistrate judge for a settlement conference.

6    And in that case, it's a different magistrate judge from the

7    assigned magistrate judge, so it's someone who's not been

8    involved in the case.  They're quite good at it.

9         It's a very cost effective way for the parties to

10   engage in mediation or settlement.  I'm not going to require

11   it, but it is an option that would be available if it's

12   something you wanted to pursue.

13        Do you have any thoughts about that as you sit here

14   right now or is that something you want to think about more or

15   have you already exhausted, in your views, the possibility of

16   mediation of some kind or settlement?

17      **MR. FINE:**  For the plaintiff, Your Honor, I don't

18   have any thoughts on it at the moment.  I think that a lot of

19   the general discussion was kind of held up by the fact that we

20   didn't really know who owned Akirix and who we should be

21   talking to.

22        And I don't know if that has been resolved.  So it

23   might make sense for us to convene amongst ourselves with

24   opposing counsel in preparing the settlement agreement before

25   we give you an answer on that, just because I don't know, you

```
 1    know, what their position is or what their posture is.
 2              THE COURT:  Right.  No, I understand.  And again,
 3    that's something that can be addressed in the status report.
 4              Mr. Mackey, do you -- I mean I guess -- let me ask,
 5    do you have any thoughts about that?  I mean to be clear, are
 6    you confident right now that you and Mr. Anderson represent
 7    Akirix or whoever owns the company?
 8              MR. MACKAY:  Yes.  Yes.  I'm confident, yes.  The
 9    answer is yes.
10              My thoughts and our thoughts, Brett and I had a
11    chance to discuss it, and we're on the same page, is there are
12    some fairly technical and -- some technical accounting matters
13    that, you know, involve international transactions, and there
14    happen to be a lot of them, unfortunately, and it could require
15    some discovery and some forensic analysis before we can really
16    talk intelligently.  And that's one of the, you know,
17    underlying concerns we had about who can even speak for the
18    company in the first place is who can speak for it and then
19    won't sort of give short shrift to actual good defenses that
20    might exist, but those need to be developed.
21              And we would always be open, and we've appreciated
22    the federal court's magistrate mediation process in the past,
23    we would always be open to settlement negotiations, but we
24    would need to have some discovery and substance under our belt.
25              MR. FINE:  If I could respond, Your Honor.  Discovery
```

1   in this case is closed.  It has been for a really long time.

2   We've had this case postponed a couple of times because the

3   plaintiff came up -- or, I'm sorry, the defendant, you know,

4   wanted to amend their complaint and wanted to do some other

5   things and then wanted to stay the case.

6           And so our position, if there's going to be a request

7   for increased discovery or reopening the pleadings somehow,

8   we'd want to be heard on that on a motion basis, because we do

9   not want to do that, unequivocally.  The time for that is

10  passed, as far as we're concerned.  And we could --

11          **THE COURT:**  And --

12          **MR. MACKAY:**  Can I respond, Your Honor, briefly?

13          **THE COURT:**  Yeah.

14          **MR. MACKAY:**  It does sound like we would want to

15  brief that.  But just to queue up our issue, if we went that

16  way, the obvious answer is, it's hard to do anything when you

17  weren't sure who was going to be doing it in the first place.

18  And that was the hang-up across the board here.  So to say that

19  the discovery period magically ran while we didn't know who

20  could do anything feels a little -- feels a little harsh.  But

21  we can address that separately and come back to the Court if we

22  need to.

23          **THE COURT:**  Right.  Well, there's -- I mean I'm not

24  going to rule on this right now.  I mean I think saying it

25  magically ran is not really an accurate way.  I mean there was

1    an order that set the date.  I do understand your point.

2            You know, the federal rules, I believe it's Rule 16,

3    has a good cause requirement for amending the scheduling order.

4    So if you feel like it's appropriate to amend the scheduling

5    order, probably a motion that shows why you think there's good

6    cause for that would probably be the approach.

7            And, you know, there's a lot of case law on what

8    counts as good cause and what don't doesn't.

9            **MR. MACKAY:**  Sure.

10           **THE COURT:**  But I'm not going to prejudge that issue,

11   but I think that would be the procedural mechanism, is a motion

12   to reopen the scheduling order, to amend the scheduling order,

13   probably amend the scheduling order.  You know, and just show

14   why you believe you can show good cause for doing so as is

15   required by the rule.

16           And, of course, the plaintiff, Worldclear, would be

17   allowed to respond and, you know, it would just be tee'd up on

18   a motion basis, I think.  Especially -- I mean and it's

19   possible -- it sound like, given what Mr. Fine said, that, you

20   know, they're not likely to agree to that, but, you know, it

21   never hurts to discuss before you make that motion.  And, in

22   fact, you know, we generally encourage and sometimes require,

23   you know, meeting and conferring before motions are filed,

24   especially if they go to those sorts of pretrial discovery

25   related issues.

 1              Okay.  Thank you for raising that issue, though.

 2     That's helpful to know that that is out there, Mr. Mackey.

 3              And again, I'm not going to prejudge that in any way.

 4     But that would be the avenue to pursue, I think, and you could

 5     raise your arguments about the uncertainty about the ownership

 6     of your client and so forth, you know.  And, you know, the

 7     court would have to decide whether that met the standard.

 8              All right.  And you have kind of anticipated the next

 9     thing I was going to ask, Mr. Mackey, which was going to be,

10     you know, whether there's -- you know, leaving aside kind of

11     standard pretrial practice, such as final disclosures,

12     objections, motions in limine, and so forth, whether there's

13     anything else that needs to be addressed before trial.

14              You've identified one issue, which is that you would

15     like to re-open discovery.  And I don't know what would follow

16     from that, whether it would lead to additional motions or not,

17     or just additional evidence for use at trial.

18              Do you have a sense -- would you be -- I mean would we

19     we basically be winding back the clock not only for discovery

20     but also for amended pleadings, for dispositive motions?

21              Do you have a sense of what -- I mean what would be

22     the scope of your ask?  And again, I'm not prejudging.

23              **MR. MACKAY:**  Sure.  And I now you're probing and not

24     holding me definitively to it, because I think that's the right

25     questions, series of questions to ask.  And my sense is that

1    maybe, there might be a dispositive motion out there, I don't

2    know.

3            I think if we -- and I use this word respectfully --

4    if we rush to trial under the current record, there might be

5    their own set of motions in limine or such because the record's

6    not very well developed and the disclosures might not be what

7    they ought to be, and we might have another series of motions

8    that effectively get to the same place.  So I just don't know

9    how to accurately answer the Court's question, but I think it's

10   the right question to ask, and we can think about it some more.

11           **THE COURT:**  Well, that's something you can address in

12   the joint status report.  And to be clear, when I say joint

13   status report, I want one filing, but you don't have to agree

14   on everything.  You can just say, you know, the plaintiff -- or

15   the defendant's, rather, position is X, or whatever, and then

16   the plaintiff disagrees or --

17           Does that make sense?  I mean --

18           **MR. MACKAY:**  Yes.

19           **THE COURT:**  -- one document, but you don't have to

20   necessarily agree on everything.  You can state separate

21   positions.

22           All right.  Let's see.  Mr. Fine or Mr. Stephens, is

23   there anything -- leaving aside the issues that Mr. Mackey has

24   alluded to, which you've indicated you would oppose, you

25   definitely said you'd unequivocally oppose reopening discovery.

1    And I gathered from your answer that that would include other

2    efforts to amend the scheduling order for things like amending

3    pleadings and dispositive motions as well, but let me know if

4    I'm wrong about that.

5          But is there anything else, apart from addressing

6    those kinds of issues, that would be raised by the opposing

7    party to you?  Is there anything else you would foresee that

8    would need to be resolved before trial, other than just

9    standard pretrial practice?

10         **MR. FINE:**  Your Honor, you stated what our position

11   would be with respect to sort of I guess what I'll call heavier

12   motions.

13         With respect to the other pretrial things, I can

14   envision a few motions in limine, but other than that, I don't

15   really see anything other than that.

16         **THE COURT:**  Right.  And ordinarily when I -- once I

17   set a trial date, you know, I'll also set a date for a final

18   pretrial conference.  I'll issue a trial order sometime before

19   that, which will have deadlines for things like final

20   disclosures under the rules, objections, and motions in limine.

21         And I mean I'm not usually -- if there is like an

22   earthshattering motion in limine that really changes

23   everything, that's the sort of thing I like to know about in

24   advance.  But the kind of typical target motions, you know,

25   maybe challenging an expert, maybe challenging some specific

1  evidence or some specific issues, those things I think are

2  comfortably handled within the scope of the pretrial order --

3  or the trial.

4          **MR. FINE:**  I think that, at least from what I'm

5  envisioning, it would be things that would be handled within

6  the scope of the pretrial order.  I don't see anything --

7  there's some evidentiary issues that, you know, I've thought

8  about since getting back into this case from the perspective of

9  the defendants, and there are some things that I think, you

10 know, we'd ask to exclude.  But I don't think that that falls

11 outside of --

12         **THE COURT:**  No. no.  Evidentiary issues usually, you

13 know, are in that scope.  I mean this is an example from a

14 criminal docket.  But, you know, I had a case recently where

15 the government filed a motion in limine to bar the defendants

16 from raising a defense, which was basically going to be

17 effectively the only issue at trial.  And that was the sort of

18 thing that I appreciated being tee'd up earlier.

19         But things like, you know, this witness should be

20 excluded, these documents should be excluded, that sort of

21 thing, where they're not really just like the whole case, I

22 think are comfortably addressed just in pretrial practice.

23         **MR. FINE:**  Yeah.  So to be candid, this case has

24 been, you know, stayed for quite a while.  And I'm kind of -- I

25 mean I would argue I know it well, but I'm getting back into

1  kind of the nuts and bolts of it.

2       Assuming I come across something like that that's

3  more earthshattering and that affects the claim, would that be

4  the kind of thing where the Court would want me to request a

5  hearing or do something along those lines, or how would you

6  like me to address them?

7       **THE COURT:**  Yeah.  The first step, as I said, is I'm

8  going to ask for the status report in 30 days.  And if you -- I

9  would like you to try and think of whether there is anything

10 like that in that time period.  If there is, put it in the

11 status report and then we'll decide.

12      **MR. FINE:**  Okay.

13      **THE COURT:**  But, yeah, and if you come across it

14 later, it's the sort of thing I'd say just file a motion as

15 soon as possible if you think you have a motion that goes

16 beyond -- you know, beyond the scope of what we've talked

17 about.

18      But, again, I can handle quite a bit in pretrial

19 practice.  It really is just the sort of thing where it's, you

20 know, effectively deciding the motion would be deciding the

21 case, that sort of thing I think it sometimes makes -- even if

22 it's technically styled as a motion in limine, if it really

23 would be, you know, potentially the most important issue in the

24 case or -- I don't know.  There's not a clean metric for that.

25      But do you have a sense of what I'm talking about?

1          **MR. FINE:** Sure, yeah, of course. And I think we'll

2    be able to parse out on our end whether or not something

3    requires that sort of extra attention or not.

4          **THE COURT:** Yeah. Something that would require more

5    time and attention than what we would want to be able to

6    resolve in the run up to trial or at the pretrial conference

7    effectively.

8          **MR. FINE:** Sure.

9          **THE COURT:** All right. So if you see anything like

10   that, please flag it. And I appreciate, Mr. Mackey, what

11   you've indicated, because I think those sorts of things also

12   fall within the scope of what I'm asking about, you know,

13   something that would go clearly beyond what we would be able to

14   address just in standard pretrial practice.

15          Now, my recollection is that there's a request for a

16   jury trial here from one or both parties.

17          Is that correct?

18          **MR. FINE:** That's correct, Your Honor.

19          **THE COURT:** Okay. And at least some of the claims

20   are damages claims, right, if I remember?

21          **MR. FINE:** Yes, Your Honor.

22          **THE COURT:** Okay. All right. Well, depending on how

23   long the trial will take, I will probably seat either seven or

24   eight jurors for the trial.

25          Federal Rule of Civil Procedure 48(b), as you know,

1    requires six jurors, and then having an additional juror or

2    jurors would ensure that the jury can return a verdict even if

3    one of the jurors is removed or gets sick or otherwise becomes

4    unavailable.

5           Historically, our court used 12 jurors in civil

6    cases.  There are probably -- until fairly recently, actually,

7    we were probably the last federal district court in the country

8    to do that.  But a few years ago, we modified that practice, so

9    we now follow the -- just the Rule of Civil Procedure and use

10   six plus, you know, if we feel like additional ones are

11   necessary.

12          Unlike on the criminal side, they're not actually

13   alternates, they're allowed to participate in the deliberations

14   if they're not excused.  So, you now, we would just potentially

15   have a seven jury panel or an eight jury panel, unlike in a

16   criminal case, you know, we wouldn't have to say, "Okay, well,

17   one or two of you have sat through the trial but now you can't

18   participate anymore."  Also -- and this is just informational

19   I'm telling you now, just so you're aware of it.

20          Also, I will use a jury questionnaire to streamline

21   jury selection.  The jury administrator will send that

22   questionnaire to potential jurors in advance of the trial.

23          Once we get nearer to the trial date, probably about

24   the same time as I issue a trial order, I will circulate a

25   proposed questionnaire to counsel.  Both parties will have the

1    opportunity to propose changes or additional questions before

2    the final questionnaire goes out and also to object to any

3    changes proposed by your opponents.

4            Both parties will also have the opportunity to review

5    the answers to the questionnaires a few days before jury

6    selection.  And I will provide guidance about what the parties

7    may and may not do with the information they obtain from the

8    questionnaires at the pretrial conference.  So that's just

9    informational, what I said about the number of jurors and the

10   jury questionnaire.

11           Are there any questions about any of that?

12           **MR. FINE:**  I have a quick question, Your Honor.  Just

13   because different federal districts I've been in do it

14   differently, do you allow attorney voir dire or do you conduct

15   it yourself based off of questions submitted by counsel?

16           **THE COURT:**  Generally, the latter.  Sometimes, you

17   know, if it -- usually I have counsel ask me, "Will you ask the

18   juror this."  Well, let me back up.

19           For general jury selection, general voir dire where

20   we have the jurors all together in the courtroom, I usually go

21   over some general things with them.  I have them introduce

22   themselves, we ask if they know anyone, I read them an

23   agreed-upon summary of the case, ask whether they've heard

24   anything about it, ask if they know any of the court personnel

25   any of the counsel or witnesses, things like that.

1    And sometimes, you know, I'll allow counsel to ask a

2    limited number of questions there for the pool as a whole, but

3    I usually have you clear those with me before we bring the

4    jurors in.

5    And then we call back individual jurors for follow-up

6    questioning to the jury room based on either their answers in

7    court or more commonly what they wrote on the questionnaire,

8    their answers on the questionnaire.  And in that context,

9    usually before the -- well, before we bring the juror back, I

10   ask counsel just to tell me what it is they want to follow up

11   on.  And I usually try and do it.

12   You're welcome to ask me, you know, will you --

13   "Could you ask the jury X," and then I'll usually just tell the

14   jury, "Please answer that."  And over the course of the day if

15   it feels like to me like counsel is being reasonable and not

16   trying to kind of -- what's right word for it -- not trying to

17   condition the jury by the way they ask questions, a lot of

18   times I -- it gets to the point where I'm effectively letting

19   counsel ask the questions.  But I do like to at least formally

20   keep myself as a filter between -- and sometimes I might tell

21   the jury not to answer that.

22   But as long as you're both being reasonable and not

23   trying to kind of condition the jurors by the way you've

24   phrased questions and are asking fair and neutrally phrased

25   questions that are not kind of deliberately trying to push an

1    answer of one kind or another, I oftentimes effectively pretty

2    much let you ask the questions in that individual questioning.

3    But it's subject to that kind of -- it usually doesn't start

4    out that way and it usually kind of requires you to -- how do I

5    say this -- kind of gain my confidence that you're not going to

6    do that.

7             **MR. FINE:**  Sure.  That makes sense.  I've seen it

8    done both ways.

9             **THE COURT:**  So that's -- does that answer your

10   question well enough?  It's not a clear answer, I apologize,

11   but --

12            **MR. FINE:**  No, I totally understand.  That answers my

13   question.  Thank you.

14            **THE COURT:**  Yeah, I mean I have had times when I've

15   let an attorney ask questions and then regretted it, because

16   you all get pretty good at asking questions in a way that are

17   carefully crafted to get the answer you want.  And, you know,

18   I've seen some very -- I've seen counsel ask questions to

19   jurors in ways that elicit an answer that I wasn't at all

20   confident was what the juror really thought.

21            **MR. FINE:**  Sure.

22            **THE COURT:**  Just because counsel wanted the juror off

23   the case.

24            **MR. FINE:**  More likely in criminal cases.

25            **THE COURT:**  Yes, that was in a criminal case, yes.

1          Okay.  Any other questions about the things we've

2    just discussed about juries, jury selection and number of

3    jurors?

4          **MR. FINE:**  No, Your Honor.

5          **THE COURT:**  All right.  I guess the next question is,

6    and this is maybe a tricky question, and Mr. Mackey you might

7    not have an answer, but maybe the plaintiffs at least do.

8          Do you have a sense of how long you would need to

9    prepare for trial?  And what I'm saying is, you know, if we

10   were in a position to set a trial date today, you know, what

11   would -- you know, sometimes counsel says we need 30 days, we

12   need 60 days, we need 90 days.

13         How much time do you think you would need to prepare

14   for trial?

15         **MR. FINE:**  Just because of my personal scheduling

16   conflicts, I'm thinking that it would have to be -- I could do

17   it in January of next year, but that's probably the soonest I

18   could be ready to go.

19         **THE COURT:**  So that's about 90 days, it sounds like,

20   maybe 60, 75, something like that?

21         **MR. FINE:**  Yeah.

22         **THE COURT:**  And I guess, Mr. Mackey, that's not

23   really a fair question for you because you don't think you're

24   ready for trial.  You think you need additional discovery and

25   so forth.  So I don't even know if that's a helpful question to

1    ask you.  I'm not sure what --

2          **MR. MACKAY:**  I can only give you the general

3    parameters of what I've spoken to Mr. Anderson about.  And we

4    both felt like -- yes, you're right about discovery.  If that

5    were to be denied, there would still need to be some real prep

6    time going into the issues I've talked about.  And I know

7    Mr. Anderson's and my schedule are both jammed for the next,

8    you know, few months.  And, you know, we had both kind of

9    envisioned something much farther out than that in terms of a

10   trial date.  So I can't speak to exactly his schedule after

11   that, but I do think it would require -- I think a January

12   hearing I can say confidently would be almost impossible on our

13   side.

14         **THE COURT:**  Okay.  All right.  Do the parties have a

15   sense -- and, again, I mean I don't know with the issue

16   Mr. Mackey raised, maybe you don't, but how many days are we

17   looking at for trial?

18         I know -- I think in the past we had this scheduled

19   for five days.  I know I've -- I'm not even confident I could

20   summarize what I've done.  But I know I've ruled on a motion to

21   dismiss and maybe even cross-motions to dismiss, and I know

22   I've ruled on cross-motions for summary judgment and I know

23   I've dismissed or granted summary judgment on at least some of

24   the claims.  And I think quite a few of the claims.  I think

25   I've narrowed things down somewhat.  I don't know if that

1    affects the time we would need for trial.

2              Does anyone have thoughts about how much time you'd

3    need?

4              **MR. FINE:**  I was still thinking five days,

5    Your Honor, but that's dependent on who the defense calls.

6    They have a lot more people sort of who are connected to this

7    than we do.  So my assumption was the total case would take

8    five days.  I think for us to put on our case is probably two,

9    maybe three.  But I don't -- I don't see -- I don't see it

10   going past that.  I'd be surprised.

11             **THE COURT:**  Okay.  And is that exclusive of jury

12   selections and deliberations?  Is that something we'd need to

13   add time in or is that inclusive?

14             **MR. FINE:**  I was baking jury selection into that,

15   just because in federal court my experience is it usually

16   doesn't take that long on a civil case, but I had not thought

17   about deliberations.

18             **THE COURT:**  Right.  Right.

19             Do you have a sense of that, Mr. Mackey?  Again, I

20   guess --

21             **MR. MACKAY:**  I do, and I'm gratified that I at least

22   spoke to Mr. Anderson about some of the right questions, and

23   this was one of them.

24             Our sense, you've already previewed, is our side is

25   more complicated than the plaintiff's side.  It's easy to make

1     allegations; it's harder to beat them down.  And the time that

2     we would need for our witnesses is going to be a little bit

3     more.

4            I think in a jury trial it naturally is a little

5     longer, and I think we would need probably -- you know, if the

6     plaintiff is taking two days, we'd probably need at least

7     three.  So, you know, there's a week or six days right there.

8            And I also need to flag an issue.  And that is, you

9     know, the plaintiffs having chosen this forum and come to Utah,

10    there's going to be a question of, you know, whether they will

11    be compelled to bring witnesses that are, you know, either

12    named or were principals in their Worldclear company.

13           And perhaps that's an issue for a motion in limine,

14    but that may also affect, you know, the notice we need for the

15    schedule and the time that it's going to take and so forth.

16           **THE COURT:**  Right.  No, and there are issues with the

17    subpoenas and the scope of the court's subpoena power.  I mean

18    there are a couple of ways of dealing with that.  One is

19    through, you know, trial preservation depositions.  I don't

20    know if you've had the opportunity to do some of those with any

21    oversea potential witnesses.

22           **MR. MACKAY:**  Sure.  Sure.

23           **THE COURT:**  Another possibility, which I'm amenable

24    to, though I mean I -- you know, it's -- I am willing to let

25    witnesses, you know, as long as -- my preference is for

1    in-court testimony, but I am willing to let -- you know, if

2    getting to Utah would be a hardship for someone, I'm willing to

3    let people appear and testify by Zoom.  And we'll all be in the

4    courtroom and they'd just pop up on the courtroom screen.  But

5    that is something that I have accommodated in the past,

6    especially for witnesses who are overseas.  I did that a lot

7    during COVID for people who are just older and didn't want to

8    travel but, you know, even post-COVID I've done that in both

9    civil and criminal cases for overseas witnesses.

10           In criminal cases, you know, it's almost certainly

11   necessary to have the consent of the defendant.  It's nice if

12   the parties can agree to that.  I don't know that I -- I

13   suspect I could probably order it over objections in a civil

14   case but -- I don't know.

15           Are there any thoughts to that?  Do you anticipate

16   any issues along those lines, Mr. Fine, Mr. Stephens?

17           **MR. FINE:**  I don't, Your Honor.  I think that our

18   witnesses -- our overseas witnesses or witness will be here, so

19   that's not going to be a problem from our end.

20           I don't know that the defense has disclosed any

21   witnesses that are overseas, so I'm not sure that it's a

22   problem that we will have to deal with in this case.

23           **THE COURT:**  Okay.

24           **MR. FINE:**  You know, obviously if there was some

25   other undisclosed foreign witness that needed to come over or

1    needed to appear by Zoom, I think -- or I guess needed to

2    appear by Zoom in lieu of coming, I think we would have to have

3    a discussion on that witness beforehand because, like I said,

4    there hasn't been anyone disclosed that I'm aware of.  Now,

5    again, I could be wrong, it's been a while, but --

6            **THE COURT:**  And this may tie back into the issue

7    Mr. Mackey raised before, you know, trying to re-open discovery

8    and the time for making designations and so forth.  But I don't

9    know, do you -- okay, but I appreciate your thoughts on that.

10           And Mr. Mackay, are you aware of anyone specifically

11   that you've designated or is this just related to the idea that

12   you might come across additional people you would want to --

13           **MR. MACKAY:**  Well, I don't know if Mr. Fine is

14   referring to Mr. Hillary as the one person that they would

15   bring or not, it wasn't clear --

16           **MR. FINE:**  Yes.

17           **MR. MACKAY:**  -- for certain that -- okay.  Thank you

18   very much.

19           And that may obviate the other questions that we had,

20   but it's common -- I don't know if common is the right word --

21   it has happened in my experience where a court will say, if a

22   company chooses a forum, the Court has the power to compel key

23   witnesses to appear on behalf of the company.  So that's the

24   issue that is bouncing in my head.  And I apologize for

25   throwing out an issue when I don't really have a firm answer or

1    request tied to it, but that might be something.

2            **THE COURT:**  Understood.  I mean it sounds as though

3    Mr. Hillary is planning to be here when we have the trial.  And

4    if there's other witnesses, you know, you may be right that

5    there might be circumstances where I would, you know, compel

6    someone to appear.  I think it's much more likely that someone

7    who didn't want to call that I felt would be unfair for -- you

8    know, that there was gamesmanship or something going on, I

9    think it's more likely that I would require them to appear by

10   Zoom than to actually travel, you know, what, 12,000, 15,000

11   miles, however long it is.  It's a long ways.

12           I mean it may be inconvenient, they may have to

13   testify in the middle of the night or something.  I know I had

14   a case where we had a critical witness testify from the

15   Philippines and we did what we could to accommodate

16   the schedule.  But it obviously wasn't super convenient for the

17   witness.  But those are things that we can address, I think.

18           **MR. MACKAY:**  I guess to go to your initial question,

19   then, I see a five-day jury trial, as we understand the case

20   right now, with a jury, as being fairly aggressive.

21           **THE COURT:**  What would be conservative?

22           **MR. MACKAY:**  We don't know.  What do you mean -- when

23   I say aggressive, I mean we may be pressed to be able to put on

24   our entire case in that amount of time.

25           **THE COURT:**  No, that's what I meant.  And what I

1    meant by conservative is what do you think would be safe, what

2    would be a safe amount of time to schedule?

3         **MR. MACKAY:**  I want to be candid with the Court, I

4    think that's where the limits of my knowledge are going to

5    catch up to me here, but I couldn't -- I couldn't tell you for

6    certain.  I do know that, in my discussions, we think that five

7    days was hard.  I think a conservative number, I would be

8    guessing a little bit, but I would say, you know, seven days.

9         **THE COURT:**  Okay.  Well, I mean that's helpful, yeah.

10   Okay.  I guess I'd like to figure out how we proceed then.  I

11   definitely want the status report in 30 days.  And I want you

12   to address all of these issues, you know, to the extent --

13   whether you're willing to consent to a trial before a

14   magistrate judge, whether everyone is.

15        And again, if everyone is not willing, you know, if

16   there's one or more parties that object, just say, you know,

17   the parties have not agreed -- you know, do not consent.  You

18   don't need to say who doesn't consent.

19        But also, you know, whether you're interested in

20   mediation or settlement options, the issue of any additional

21   things that need to be decided before trial, how much lead time

22   you need before the trial, how many trial days, those are

23   things I'd like to have in that.

24        I guess what I -- it sounds as though that you're

25   fairly certain, Mr. Mackey, that you are going to want

1    additional discovery; is that right?

2            **MR. MACKAY:**  That is where our head is right now.

3            **THE COURT:**  Okay.

4            **MR. MACKAY:**  Just -- it's just it's a complicated

5    case in some ways.  I guess that's where our head is, that's

6    the best I can do right now.

7            **THE COURT:**  Okay.  Well, I want you to do is I want a

8    firm answer on whether you're going to seek that or not in the

9    status report in 30 days.  And I'm going to forewarn you, if

10   the status report says you're going to seek it, I'm probably

11   going to issue an order, you know, shortly after I get the

12   status report that probably sets a deadline for you to file a

13   motion.  And it might be in like a couple weeks or so.  I don't

14   want -- you know, that's an issue I would like to get promptly

15   tee'd up and resolved so it doesn't result in significant

16   additional delay.  I think we've already had a great deal of

17   delay in the case.

18           I think -- as I said at the beginning, I have -- I

19   recently had some late-breaking changes in my trial calendar

20   the last couple of weeks that, you know, would make it possible

21   to maybe schedule something early next year.  But I do have a

22   fair number of criminal cases set for trial during that

23   timeframe, though I'm not aware that any of those trials will

24   actually go forward.  Sometimes they surprise me.

25           So if I did try to set the case that early, it would

1  have to be contingent on none of the criminal trials scheduled

2  for the same time actually going.  And if one of those trials

3  did go forward, I'd have to bump this case anyhow.  But given

4  the issues that Akirix has raised, that's probably not going to

5  stick anyway to try and shoot for that kind of a contingent

6  trial date.

7         I could offer a firm trial date sometime in the fall

8  of 2025 sometime, you know, as early as September.  And then at

9  that point I would hold that date and do everything I can to

10 prevent any scheduling conflicts.  So essentially, if you dealt

11 with state courts, it would be like what would be called like a

12 first-priority trial setting.

13        And my inclination is that maybe we should do that,

14 set such a date now.  I think that's far enough out that we

15 would be able to get these issues that Mr. Mackey has alluded

16 to resolved before that time and if they necessitated bumping

17 the trial date we could bump it, but at least if we could get

18 everything resolved in time at least we'd have something on the

19 calendar that would be locked in so that -- you know, my

20 concern is that, if we wait until we get everything resolved, I

21 might be in a position where I'm telling you, well, now it's

22 going to be January of 2026 or something.

23        So my preference would be to get something on the

24 calendar for the fall in the hope that we can resolve any

25 issues along the lines of what Mr. Mackey has raised, either by

1    denying the request or by granting the request and

2    accomplishing it in time to get things done and still meet the

3    date.

4              **MR. FINE:**  Can I address that real quickly,

5    Your Honor?

6              **THE COURT:**  Yeah.

7              **MR. FINE:**  So my concern is this.  I guess my concern

8    is, again -- and, you know, keep in mind that even before you

9    were assigned as the judge on this case, we had a couple of

10   significant delays, very significant delays, because the

11   defendant came in, in one instance a year after the deadline,

12   and in another -- I think there were two instances, but let me

13   just stick to the one -- a year after the deadline to amend

14   their pleadings.

15             And at the end of the day, I believe, if I'm not

16   mistaken, that everything that they had brought up at that

17   point ended up being dismissed on -- or not dismissed but ruled

18   against on summary judgment.  Although I may be wrong about

19   that.  Don't hold me to that.

20             But my concern is that we say, okay, we're not going

21   to set this case until the fall, and then we get a request to

22   re-open discovery and the Court's position is sort of like,

23   well, you know, on the one hand we shouldn't re-open discovery,

24   but on the other hand, we're not going forward until the fall

25   so we're going to go ahead and re-open discovery.  This is what

1   happened to us previously, so that's why I'm kind of in this,

2   you know, once-bitten-twice-shy kind of situation.

3           We are -- I can't overstate how opposed we would be

4   to re-opening discovery in this case.  You know, it's been

5   going on for five years.  We've had plenty of time for

6   discovery.  You know, so I guess my concern is that, in doing

7   that, it makes it pretty easy to re-open discovery if the

8   Court's not necessarily concerned about, you know, the delay to

9   us.  And I don't know what can of worms that's going to open on

10  our side.

11          If we re-open discovery and they start claiming that

12  they need something or they need to depose some other witness

13  in New Zealand or they want to introduce something else, then

14  we're looking again at us coming to you and saying, "Well, no,

15  we have this date certain, but because discovery was re-opened,

16  now we need another 30 days or another 60 days" and then we're

17  just kicking the can down the road for another year.

18          And this is the same thing I said when we were

19  arguing about letting them bring in this counterclaim before.

20          The butterfly effect of these decisions is to delay

21  this case immensely.  My request would be that maybe we look at

22  a conditional trial date early next year, mid next year --

23          **THE COURT:**  Mid next year's not a possibility.

24          **MR. FINE:**  Okay.  Because, like I said, I just don't

25  want us to get in a situation where we look at it and we say,

1    "Okay, this isn't going until November anyway, so let's go

2    ahead and open discovery.  What harm is there?"  There's

3    significant prejudice at this point to the plaintiff and

4    expense in doing that that, you know, we would be very against.

5            So I don't -- I just want to bring that up.  I

6    don't -- you know, I'm not asking the Court for a decision on

7    that now, but I just wanted to kind of voice my concern with

8    how I see that possibly shaking out.

9            **THE COURT:**  Right.  And to be clear, I mean if we had

10   been having this status conference a couple weeks ago, I would

11   have said the very first possible date I could give you is next

12   September.  And I now think it's possible -- it's possible that

13   something could work out in January, the second half of January

14   or the first half of February, though, candidly, I would be

15   scheduling you against a lot of criminal case.

16           **MR. FINE:**  Sure.

17           **THE COURT:**  But criminal trials have a way of being

18   continued or pleading or just going away.  I don't ordinarily

19   do that with civil cases.  I usually don't like to schedule

20   them against criminal trials because they always lose.  So I

21   like to schedule a civil trial at a time that I know I can go

22   to trial and I like to hold the date and just not allow

23   anything to be scheduled on top of it.

24           So I guess, to be clear, like March through August

25   are not possibilities, they're just not, just based on

1    available real estate on my trial calendar.

2         And it sounds like there's -- I don't know, January

3    or February sounds ambitious based on what I've heard today,

4    but I understand your concern.  It's been a while since I've

5    been into this case.  I believe I probably, on a motion to

6    dismiss, addressed some of these issues.  It seems like there

7    were issues about whether things related back or -- I can't

8    remember all the details of it.

9         **MR. FINE:**  There was something along those lines, but

10   I candidly don't remember exactly what it pertained to either.

11        But I mean, like I said, I just -- I guess what I'm

12   asking is just for the Court to be aware of that issue.  You

13   know, even if we're set in September, October, November, we

14   don't want to re-open discovery.  I just think the unforeseen

15   consequences of that are immense.

16        And obviously I know we're going to brief this and I

17   know it's going to be, you know, a motion that we're going to

18   get a chance to respond to, but I just don't like -- I guess

19   the easiest way to put it is I don't like how easy that makes

20   it to re-open discovery in a case that is five years old where

21   discovery has been closed, I want to say for a year and a half,

22   maybe two years.  So --

23        **THE COURT:**  I think you've been stayed for that long

24   so I think it's probably closer -- longer than that.

25        **MR. FINE:**  Sure.  And you know, the stay initially, I

1    mean just to maybe, I don't know, complain some more, the stay

2    was originally only supposed to be 60 or 90 days, I think.

3    Again, if I'm misstating that, I apologize, because I'm going

4    off of recollection here.  But my recollection is that the stay

5    was initially supposed to be relatively short and ended up

6    taking longer and longer and longer.

7            We moved to dissolve it a couple of times and I think

8    we managed to finally, you know, get that ball over the goal,

9    but I guess that's -- I'm just raising this concern.  I know

10   that this isn't the forum for an actual decision on that, so I

11   apologize for taking the time.

12           **THE COURT:**  It is not.  And I understand your

13   position.  I mean I guess given -- you know, honestly, I wasn't

14   going to really give you the possibility of taking a shot at

15   January and February unless you both felt like you were willing

16   and able to do that.  Because as I said, it's contingent, it's

17   not something I usually do anyway and I really don't like to

18   say, you know, "Just kidding, I'm going to have to continue it

19   after all."

20           So I mean I guess the question is, do you want a

21   trial date or not?

22           **MR. FINE:**  I mean I'll take a trial date for sure.

23           **THE COURT:**  It's probably going to have to be in

24   September then at the earliest.  And I mean I don't intend that

25   as kind of opening the door to a discovery requests.  I mean,

 1  I'll be candid, I will probably -- the motion to re-open

 2  discovery or to amend the scheduling order will be referred to

 3  the magistrate judge.  She will address that.

 4          You know, that's the sort of thing that would be

 5  subject to objection if it went the wrong way.  Though, I

 6  mean -- you know, I don't know without checking what the

 7  standard of review is.  You know, a lot of times magistrate

 8  judge decisions we tend to -- you know, if they are

 9  discretionary at all, they're not usually subject -- the scope

10  of challenge and objection can be quite limited.

11          **MR. FINE:**  I think it's an abuse of discretion in

12  that case, in the case you're speaking of, so yes.

13          **THE COURT:**  I mean I think basically you'd have to --

14  Mr. Mackey has to try and persuade Judge Oberg that there's

15  good cause here, and you have to make your case why there isn't

16  based on the delay and points you've made to me.

17          But the purpose of the trial date is not to put a

18  thumb on the scale one way or the other, it just reflects the

19  realities that, you know, that's when I can do it.

20          **MR. FINE:**  Sure.  I'm sorry.  Yes, we would like a

21  trial date, just to be clear.

22          **THE COURT:**  Okay.  You just needed to vent a little

23  bit.  I understand.

24          **MR. FINE:**  I felt like I had to say something about

25  it, yes, Your Honor.  And again, I apologize.  I know this

 1    isn't necessarily the forum, but I --

 2          THE COURT:  I understand.  From your perspective and

 3    your client's perspective, this has gone on longer than a civil

 4    case ought to.

 5          All right.  Let's look at dates, then.  I think I'll

 6    set it for seven days, just to be safe.  We may not need that

 7    time, but there's no harm in blocking out a couple of extra

 8    days just in case.

 9          What is your availability in September?

10          MR. FINE:  I have no conflicts I'm aware of,

11    Your Honor.

12          THE COURT:  Mr. Mackey?

13          MR. MACKAY:  We have no conflicts that we're aware of

14    either, and I have checked on that.

15          THE COURT:  Yeah, I figured.  I was hoping that was

16    far enough out that people don't yet.  I have -- my preference

17    would be probably later in the month just because a lot of

18    times the court has a -- we have our circuit conference.  And I

19    don't know what the date is, but I like to attend that if I

20    can.  That's oftentimes in the first half of the month.

21          MR. FINE:  Actually, Your Honor, if you'll bear with

22    me for one second, there is a possibility that I have a board

23    meeting set overseas in September.  Let me just double-check

24    that.  I don't think it's September, I think it's October --

25    no, it's October.  Okay.  Never mind.

 1          **THE COURT:**  Okay.  What I'm going to propose is the

 2    15th through the -- starting on September 15th and going

 3    through potentially September 23rd.  We'll try and finish by

 4    the 19th, but I want you to block out the first two days of the

 5    following week just in case we need it.

 6          Would those days work?

 7          **MR. FINE:**  Yes.

 8          **MR. MACKAY:**  Yes.

 9          **THE COURT:**  Okay.  All right.  And I will hold those

10    dates, you know, unless and until -- you know, unless and until

11    it becomes untenable.  But I think we need to try and get this

12    to trial and I think -- so I will hold those days.

13          I think I'd like to also schedule a pretrial

14    conference.  Let me see.  I think I'd like to say

15    September 2nd, if you're available, because that's the -- I

16    like to give -- I like to do that about two weeks before the

17    trial conference.

18          So I think September 2nd would be a good date.  I

19    think September 1st is Labor Day.  I'm going to ask you to hold

20    that day for now.  If the amount of -- if the number issues we

21    need to resolve is limited, we'll probably just hold the

22    pretrial conference during the afternoon.  If it's extensive,

23    we might need the whole day.  So I'm just going to say hold

24    September 2nd for a final pretrial conference.

25          Will that work?

41

1          **MR. FINE:**  Yes, Your Honor.

2          **MR. MACKAY:**  Yes.

3          **THE COURT:**  Okay.  And so the 15th through the 23rd

4     for the trial.  Okay.

5          And that's -- again, as I said, that -- I want to be

6     clear for the record that that's not intended to build in time

7     for additional discovery or motion practice.  It just reflects

8     the realities of when I can offer you a guaranteed trial date

9     that I -- you know, where it really is a first setting and not,

10    you know, subject to a number of other cases not going forward.

11         And the issue of whether discovery should be

12    re-opened I anticipate just being resolved on its own merits,

13    you know, based on the arguments the two sides make to Judge

14    Oberg.  You know, if Akirix can show good cause or if you can

15    show that there isn't good cause or that they haven't shown

16    good cause.

17         And I don't think the date -- I anticipate that --

18    let me just say, I do not -- the trial date is not intend to

19    have had any bearing on the resolution of that issue.

20         **MR. FINE:**  Understood.

21         **THE COURT:**  Yeah.  And that issue I think should just

22    be resolved on its own merits.  I mean the rules expressly

23    provide that scheduling orders can be amended, but they also

24    have a threshold showing that is required for that.  And the

25    Tenth Circuit has interpreted that showing to have -- you know,

1   to mean something.  It's not a paper tiger, it is a real

2   showing that has to be made.

3         All right.  With that, are there any questions about

4   anything we've discussed?

5         **MR. FINE:**  None from my side, Your Honor.

6         **MR. MACKAY:**  No, Your Honor.  Thank you for the time

7   today.

8         **THE COURT:**  All right.  And just -- I guess just to

9   cross the last T, I requested a status report.  I've discussed

10   the contents of that report.  I said it should be 30 days from

11   today.  I think that's probably right around Thanksgiving, so

12   maybe I need to give a more specific date.  I think -- yeah, it

13   would be right during Thanksgiving.

14         Let's say December 2nd as the deadline for the status

15   report.  That's the Monday after the Thanksgiving holiday.  I

16   think 30 days would actually end up like on the Friday after

17   Thanksgiving.  I assume you would probably prefer a different

18   day from that.

19         **MR. FINE:**  Thank you.  That's thoughtful.

20         **THE COURT:**  Okay.  So December 2nd.  And we went over

21   the issues to be addressed.

22         Did everyone take notes on that?  I'm not going to

23   put those in the minute order.  The minute entry will just say

24   a status report addressing the issues discussed at the

25   scheduling conference.

| | |
|---|---|
| 1 | **MR. FINE:**  Yes.  I have notes. |
| 2 | **THE COURT:**  Okay.  Very good.  I'll watch for that, |
| 3 | as I said, I anticipate -- I mean you should anticipate, |
| 4 | Mr. Mackey, that if you indicate, you know, that -- I'm going |
| 5 | expect the status report to say whether you intend to move to |
| 6 | amend the scheduling order and what you're going to seek.  And |
| 7 | you should expect that, if you say you're going to do that, |
| 8 | that I'll set a deadline for you to do that in pretty short |
| 9 | order.  It will definitely be a 2024 deadline. |
| 10 | **MR. MACKAY:**  Understood. |
| 11 | **THE COURT:**  Okay.  All right.  Well, thank you.  With |
| 12 | that, is it there anything else we need to discuss or any other |
| 13 | questions? |
| 14 | **MR. FINE:**  None from the plaintiff's side, Your |
| 15 | Honor. |
| 16 | **MR. MACKAY:**  No, Your Honor.  Thank you. |
| 17 | **THE COURT:**  All right.  Very well.  Thank you.  Court |
| 18 | is adjourned. |
| 19 | (Recessed at 2:40 p.m.) |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

1        CERTIFICATE OF COURT REPORTER

2

3            This is to certify that the proceedings in the

4     foregoing matter were reported by me in stenotype and

5     thereafter transcribed into written form;

6            That said proceedings were taken at the time and

7     place herein named;

8            I further certify that I am not of kin or otherwise

9     associated with any of the parties of said cause of action and

10    that I am not interested in the event thereof.

11            In witness whereof I have subscribed my name this
      30th day of October 2024.
12    Teena Green
      _____
13    Teena Green, RPR, CSR, CRR, CBC

14

15

16

17

18

19

20

21

22

23

24

25